COMMONWEALTH *vs.* HOWARD COTTER.

Hampden.   September 10, 1979. — October 19, 1979.

Present: HALE, C.J., ARMSTRONG, & GREANEY, JJ.

*Conspiracy.*

At a criminal trial, there was sufficient evidence to warrant a finding that the defendant conspired with others to receive or aid in the concealment of stolen goods worth in excess of one hundred dollars; neither the number nor the value of the stolen items actually purchased by the defendant was a fact essential to the proof of the charge. [481-482]

At the trial of a defendant charged with conspiracy to buy, receive or aid in the concealment of stolen goods worth in excess of one hundred dollars, the judge did not abuse his discretion in admitting in evidence testimony as to an accusation that the defendant had stolen the truck which contained the stolen items, which the defendant had unequivocally denied, where the statement was relevant to show the defendant's knowledge of the existence of the truck and where, in view of other evidence, it was inconceivable that the jury would have concluded that the defendant had stolen it. [482-483]

INDICTMENT found and returned in the Superior Court on April 18, 1978.

The case was tried before *Bregianes*, J., a District Court judge sitting under statutory authority.

*David A. Robinson* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant was convicted on an indictment charging that he conspired with Alton Moss, James Howard Wiggins, Timothy Ford, Henry Shaw, Esther Shaw, Donald Brooks, Angelo Mancinone, and Frank Simmons, Jr., "to buy, receive or aid in the concealment of certain stolen property, to wit, Certain Leather and Suede Coats, of the value of More than One Hundred Dollars of the property of the Charter Oak Apparel Company," and has appealed.[1] He argues (1) that the denial of his motion for a directed verdict was error and (2) that there was error in the admission of certain testimony. There was evidence from which the jury could have found the following facts.

On January 2, 1977, Wiggins rented a U-Haul truck in Wilson, Connecticut, and, together with Ford and Moss, loaded it with 500 coats, packaged in 100 bags, which they had stolen during a break in the premises of the Charter Oak Apparel Company in Hartford on the previous day. The coats had a total value in excess of $25,000. Wiggins and Ford drove the truck to a motel in Springfield with Moss following along behind in a car which he had rented. They arrived at the motel about 12:30 or 1:00 A.M. on January 3 and hired a room. Before going to bed Ford made a telephone call. In the morning the three left the truck parked at the motel and drove in the rented car to Esther Shaw's house. Wiggins had met her before. Upon arriving at Mrs. Shaw's house they went inside. Mrs. Shaw and her daughter were there. The three had taken with them one of the bags containing five of the coats. A man later described as old and white arrived. The three were in Mrs. Shaw's house about an hour during which time they talked "generally." There was no specific discussion at that time about the bag of coats which had

---

[1] Of those indicted, only Mancinone, Esther Shaw, Henry Shaw and Donald Brooks were tried with Cotter. Henry Shaw was acquitted by direction of the court. The other four were found guilty and, so far as appears from the record before us, only the defendant has appealed.

been brought into the house. While they were talking, the old man removed two of the coats from the bag. Wiggins, Ford, Moss and Mrs. Shaw then left to meet "some guy" who was to buy the coats. Mrs. Shaw drove her car and was accompanied by Ford; Wiggins and Moss followed in the rented car. They went to the corner of Pine and Cedar Streets and waited about an hour. Nothing happened during that time.

They then went to Mrs. Shaw's office at the Department of Public Welfare.[2] They all entered the waiting room of the building, and Mrs. Shaw entered her private office together with Ford. When Ford emerged he was accompanied by a man described as a little old black man. The men followed him outside, and the four entered his car. They drove to a parking lot in the rear of a fast food restaurant in downtown Springfield, got out of the car, walked down the street, went to the second floor of an office building, and entered Cotter's office. The "little man" then went further inside the office while the other three remained in the waiting area. The little man returned, and he and the other three left the building together and walked to a bar a short distance away. Wiggins and the little man entered the bar while Moss and Ford remained outside. When inside, the little man approached a partition, and Cotter came up to him. They talked. Cotter than approached Wiggins and said, "Do you want to make a deal?" Wiggins did not answer as they were in a public place and Cotter was talking "kind of loud." Cotter said, "You got some coats that you want to sell?", to which Wiggins answered in the affirmative. Cotter asked him, "How much do you want, twenty-five dollars a coat?", and Wiggins responded, "No, thirty." Cotter then said, "Thirty dollars?" Wiggins said, "Yes," and Cotter said that he would call Mrs. Shaw and get back to Wiggins. While this was going on the little man

---

[2] It appears in the record that Mrs. Shaw was employed there as a case-aid worker.

had stepped aside and did not participate in the conversation.

When the conversation had ended the little man and Wiggins left the bar and went outside, where they met Ford and Moss. They then drove in the little man's car back to Mrs. Shaw's office. Arriving there they all went into the waiting room where they had been before, and the little man went into Mrs. Shaw's office. About ten or fifteen minutes later Brooks arrived and entered Mrs. Shaw's office. He reappeared and motioned to Wiggins, Moss and Ford to come with him, and the four left the building. When they got outside the little man had left. Brooks said he had a deal for the whole truck. At that time Brooks had not been told by them that they had a truck or that they had coats in the truck at the motel lot. Brooks then asked them to "Give me two tags off the coats, and I'll get back to you." Wiggins went to the car, took two tags from the coats which he had in the car, and gave them to Brooks. During this time Mancinone had been waiting in Brooks's car, and after Brooks received the two tags they left. Wiggins, Ford and Moss went back into the waiting room outside Mrs. Shaw's office. They saw her briefly and left with her. At her direction they went to Blunt Park and again met Brooks and Mancinone. Mrs. Shaw got into Brooks's car. She returned, told Wiggins to pull his car around the corner, and then drove off with Brooks and Mancinone. Wiggins pulled around the corner as directed and waited. Later Brooks, Mancinone and Mrs. Shaw arrived, and Brooks and Mrs. Shaw came over to the car. Mrs. Shaw talked with Ford and Brooks with Wiggins. Brooks told Wiggins that he could get him a sale for seventy coats, and Wiggins told him that he did not want to sell less than the whole truckload. Brooks then walked away. Mrs. Shaw got into Wiggins's car, and they drove back to her office. Mrs. Shaw informed them that she wanted to see the truck, and they went back to the motel, where she did so.

Later Wiggins, Ford and Moss returned to Cotter's office at Mrs. Shaw's direction, where they expected to meet some "little guys" about the coats. Wiggins went to the second floor office where he was met by two short, white males. They conversed with Wiggins, and then Wiggins left them and rejoined Ford and Moss. The three returned to the motel and saw that the truck was not there.

Unknown to any of the actors, one Steven Allen, a field manager for the U-Haul company, had had a conversation with a Springfield U-Haul representative as the result of which he had gone to the motel parking lot to see the U-Haul truck. He went into the motel and, after a conversation with someone behind the desk, "confiscated the truck." He "hot wired the truck" by running a wire directly from the battery to the distributor, started the engine and drove it to the local U-Haul agency. There he gained access to the body of the truck and observed green plastic bags loaded with coats. He called the police and then drove the truck to the police station.

Upon finding the truck missing, Wiggins, Ford and Moss went to the U-Haul office and asked what they should do. They were told to call the police, which they did. The time was now about 4:30 in the afternoon.

About 8:30 P.M. Wiggins, Ford and Moss met with Mrs. Shaw. She drove them to the bar around the corner from Cotter's office where they had met him earlier. Mrs. Shaw left Wiggins and Ford in front of the bar and she and Moss drove off. Wiggins had with him the bag containing three coats. Cotter approached them, led them to a door leading into the kitchen at the side of the bar and directed them to enter. Finding that door locked, he directed them to go into the bathroom, which they did. Cotter asked to see the coats. Four other people came in, and they too looked at the coats. Wiggins said to Cotter, "You got our truck," and Cotter denied the accusation. Cotter offered $50 for the three coats. This was not accepted, and Cotter then turned to one of the other men

and asked for and was given a ten dollar bill. Wiggins, who had no money with him and who needed some money so that he and his companions could get home, accepted the $60, and the coats were turned over to the men.[3]

Wiggins and Ford left the room and went out to the street. Mrs. Shaw and Moss were not there. They waited for a while and Moss returned. They had a discussion about whether they should leave the area or try to find out what had happened to the truck. They concluded that they should go to Mrs. Shaw's house and see what had happened. When they got there Brooks and Mancinone were there. Wiggins said, "Where's the truck?", to which Mancinone and Brooks responded, "Where's the truck, man? You're supposed to have the truck. We've got people waiting with money. Man, where's the truck?" Mrs. Shaw was present but did not join the conversation. Wiggins, Moss and Ford then returned to the motel, where they were immediately arrested.

1. The evidence before the jury together with the reasonable inferences which could be drawn from it was clearly sufficient to permit a finding of the existence of either (a) a conspiracy among all of the actors named in the above recitation to receive the stolen coats, knowing them to have been stolen, and to transfer them to a buyer or (b) a conspiracy to broker the coats surreptitiously to a buyer without actually receiving them, and thus to aid in the concealment of the coats. *Commonwealth* v. *Matheson*, 328 Mass. 371, 373-374 (1952). *Commissioner of Public Safety* v. *Treadway*, 368 Mass. 155, 160 (1975).

---

[3] On cross-examination Wiggins maintained for some time that Cotter was the purchaser of all of the coats. After lengthy examination on the subject he finally yielded his position and in response to the question, "So, we can leave it at rest that you sold one coat to Mr. Cotter and two coats to two other people," Wiggins answered, "Yes." We need not determine whether this resulted in a retraction of all his other testimony on this point, as our conclusion in this case does not rely in any way on whether Cotter bought one coat or three or none at all.

The defendant does not appear to question the existence of that conspiracy. Rather, he argues that he could not be found to have been a part of it and that if he conspired at all it was with the other men in the bathroom, one of whom gave him a ten dollar bill. As these men were not named in the indictment as coconspirators, he argues, he could not be convicted under the indictment. See *Commonwealth* v. *Dyer*, 243 Mass. 472, 492 (1922), cert. denied, 262 U.S. 751 (1923). This argument overlooks the evidence of how Wiggins, Ford and Moss came to meet the defendant, his question to them "You got some coats to sell?", his statement "Do you want to make a deal?", his determining the thirty dollar per coat asking price, and his statements that he would call Mrs. Shaw and would get back to them. This colloquy alone was sufficient to warrant the jury's finding that he had joined in the agreement and scheme to violate G. L. c. 266, § 60. See *Commonwealth* v. *Beal*, 314 Mass. 210, 221-222 (1943); *Commonwealth* v. *Schnackenberg*, 356 Mass. 65, 74 (1969).

The defendant's argument to the contrary, neither the number nor the value of the coats actually purchased by him was a fact essential to the proof of the charge. It is sufficient if it be shown to the satisfaction of the jury that the defendant conspired with the others to receive or to aid in the concealment of stolen goods worth in excess of one hundred dollars. *Commonwealth* v. *Zakas*, 358 Mass. 265, 269 (1970).

There was no error in the denial of the defendant's motion for a directed verdict.

2. Nor was there any abuse of discretion in admitting Wiggins's statement to the defendant that the truck had been stolen, followed by "You got our truck," which the defendant unequivocally denied; this statement was part of a conversation and was relevant to show the defendant's knowledge of the existence of the truck that contained the coats. Moreover, because of the undisputed evidence as to how the truck disappeared, it is inconceiva-

ble that the jury would have concluded that the defendant had stolen it.

*Judgment affirmed.*