# CHARLESTON.

STATE v. ANDY SCURLOCK

(No. 5204)

Submitted September 15, 1925. Decided September 22, 1925.

1. CRIMINAL LAW—*Burden on State to Establish Guilt by Evi-
   dence Sufficient to Establish Guilt Beyond Reasonable
   Doubt.*

   The burden is upon the state to establish the guilt of one
   accused of crime not merely by a preponderance of the evi-
   dence, but by evidence sufficient to establish his guilt beyond
   a reasonable doubt.   (p. 635).

2. SAME—*Jury Are Sole Judges of Weight and Credibility to be
   Given Testimony of Witnesses Whose Testimony Conflicts.*

   Where the fact of guilt or innocence depends on the con-
   flicting evidence of witnesses to the crime, the jury are the
   sole judges of the weight and credibility that should be given
   their testimony.   (p. 635).

3. SAME—*Appellate Court May Award Accused New Trial Only
   Where Evidence is Circumstantial, Conflicting, and Insuffi-
   cient to Support Verdict.*

   It is only where the evidence is circumstantial and conflict-
   ing and not sufficient to support the verdict, that an appel-
   late court will be justified in setting it aside and awarding
   defendant a new trial.   (p. 635).

4. Same—*Evidence Justifying Court to Award New Trial on Ground of After-Discovered Evidence Must be Material, and Such as on Another Trial Would Produce Opposite Result.*

To justify the court in awarding a new trial on the ground of after discovered evidence, the evidence must be material, not cumulative, and such as on another trial would produce the opposite result. (p. 636).

5. Same—*Whether Evidence Admissible as Evidence in Chief Should be Admitted on Rebuttal is Within Sound Discretion of Trial Court; Admission on Rebuttal of Evidence Properly Admissible as Evidence in Chief is not Ground for Reversal, in Absence of Prejudice Thereby to Party Affected.*

Whether evidence properly admissible as evidence in chief should be admitted on rebuttal is within the sound direction of the trial court, and the admission thereof in rebuttal will not be good ground for reversal unless it appears that the party affected has been prejudiced thereby. (p. 638).

6. Same—*Remarks of Counsel Justifying New Trial Must be Unwarranted by Evidence and Prejudicial to Party Affected.*

It is only where the remarks of counsel are wholly unwarranted by the evidence and prejudicial to the party affected, that they will justify the award of a new trial on that ground. (p. 638).

Error to Circuit Court, Fayette County.

Andy Scurlock was convicted of having stolen an automobile, and he brings error.

*Affirmed.*

*Dillon, Nuckolls & Mahan,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

Miller, Judge:

At the January term, 1924, of the circuit court, the defendant was tried and found guilty by the jury of having, on the ........ day of November, 1923, stolen a seven-passenger Buick automobile, 1924 model, of the value of $1700.00, the property of C. P. Cobb, R. Mankin and W. H. Hill, trading

as Oak Hill Garage Company; and on March 31, 1924, his motion for a new trial, based on the ground that the verdict was contrary to the law and the evidence, and on the ground of newly discovered evidence, was overruled; and he was adjudged to be confined in the penitentiary for the period of six years, at hard labor, and otherwise dealt with according to law.

On writ of error to the judgment below, the prisoner, by counsel, relies practically on these propositions: First, that the verdict is not warranted by the evidence; Second, that his motion based on after discovered evidence should have been sustained; Third, because illegal and improper evidence was allowed to go to the jury; Fourth, because of the improper remarks of the prosecuting attorney in the presence of the jury.

The fact of the theft and that the automobile was stolen on the night of November 20th, or morning of the 21st, out of the garage of the owners, at Oak Hill in Fayette County, is fully established. The State was obliged to rely for conviction of the defendant mainly on the testimony of one James Dalton, then under conviction for the violation of the federal prohibition law, and about to be confined in the federal prison at Atlanta, Georgia. He testified that on the night or early morning of the day the car was stolen, he was on the roadside near the Tom Blake farm, between twelve and one o'clock, waiting for a friend from Virginia with a car load of liquor; and that while there he saw and recognized the defendant in company with another man, whom he was unable to identify, pull in at a point on the road about two hundred yards from where he was, driving two cars, the one in front a Buick seven-passenger 1924 model, in charge of defendant, the other a blue Packard in charge of the other fellow. The evidence is somewhat confusing as to whether the second car was a Packard or a Jewett roadster, indeed whether the Packard was a roadster, or a five or seven passenger car. But it is quite clear, we think, both upon the direct and cross-examination, that the witness meant to identify the Buick seven-passenger car as the one in front and in charge of defendant; and he swears that by the light

of the sky and the lamps on the machines, particularly the lamps on the front of the Buick, burning dimly, he saw and recognized defendant, and saw him in the act of removing the license plates from that machine and substituting others, and that the next morning, on returning to the same spot, in company with a young man by the name of Mitchell, he found the license tags, both of them on the fence post opposite the place where he observed the cars and the defendant the night before; and that he carried the tags to Glen Jean and delivered them to state policeman Martin, and which were proven to be the dealers' license tags that were on the car when taken from the garage by the thief, whoever he may have been. If the defendant was in charge of the stolen car at the place and on the night in question, the jury might properly conclude he was the thief. If the witness swore truthfully, his testimony was positive evidence sufficient to sustain the indictment, not circumstantial and doubtful evidence.

Besides this evidence, the State introduced a number of witnesses, including Cobb, one of the owners, who identified a hammer found in the car after it was recovered in a garage in Huntington, belonging to one of his workmen, and who testified to finding under the seat a small road map showing the road to Florida from a certain point on the way; and testified that the speedometer showed that the car had been run over four thousand miles after it was taken from the garage. He also testified that on December 13th following the theft, he was called by defendant by telephone, and at his request met him in Russell, Kentucky. In the message the witness says defendant advised him he had not stolen the car, but that he knew who had, and said that if he would come down, he would tell him; but he testified that on his arrival defendant told him he knew nothing about it; that witness returned home, but later, on December 16th, he found the car at a garage in Huntington run by one Ralph Prichard, left there in the first instance by one Red Sparks, who had abandoned it, and was not apprehended, or examined as a witness, also a reputed bootlegger.

And to connect the defendant with the stolen car in tne vicinity of Huntington, West Virginia, Ashland and Russell, Kentucky, and Ironton, Ohio, the State introduced the witness Irvin Meadows, who swore that he in company with another fellow, in a car parked on the opposide side of the street, in Ashland, Kentucky, saw defendant and his brother-in-law, Fred Fergeson, indicted along with him, sitting in a seven-passenger Buick 1924 model, parked in front of a soft drink place, and that he was within about fifteen feet of defendant and Fergeson, and saw them through the windshield on their car. The man with this witness, referred to as Lonnie, was not otherwise designated and was not produced to corroborate the witness.

The evidence of another witness for the State is somewhat significant, namely that of John Edmunds, who on the night of November 20-21, 1923, was in charge of a gasoline filling station at Scarbro, about two miles from Oak Hill, and who testified that on that night Fred Furgeson drove into the station about 1:30 or 2:00 o'clock A. M. in a blue Packard six car, and purchased fifteen gallons of gasoline and a spark plug. He asked Furgeson for whom he was driving, and Furgeson answered, ''The White Star line.'' The significance of this testimony is that this was the night the Buick car was stolen, and the Packard car was of the same general appearance and discription as the Packard car owned by defendant, and in which he claims he traveled to Florida with his wife, and which he says he sold there, and returned by train. Furgeson denies that he was at the filling station or bought the gasoline and spark plug at the time specified, or at any time, but says that he was on that night at his home in Raleigh County, and was not absent therefrom during the month of November.

The defendant denies that he stole the Buick car, and denies that he was in charge of it on the night in question, or that he was on the road with it or changed the license plates as testified to by Dalton; and he relies on his and his wife's testimony, that on the 15th or 16th of November, 1923, his wife arrived in Russell, Kentucky, from her father's home in Fayette County, and that they at once started in his Pack-

ard car for Miami, Florida, going by way of Columbus, Ohio, Wheeling, West Virginia, and Washington, D. C. What time they reached Miami does not clearly appear; but defendant says they stayed there a week or so, and that they returned by train, arriving at Ironton, Ohio, about December 9th or 11th. So that defendant relied on his supposed absence in Florida to support his claim that he had not and could not have stolen the Buick car at Oak Hill on November 20th or 21st, or at any time. To support him in this alibi, defendant places much reliance on the testimony of Joe Wren, an automobile dealer in Scarbro, from whom he purchased his Packard car, who swore that some time near the time he heard of the theft of the Buick car, he received a telegram from a man in Florida, inquiring if there was anything remaining due on the Packard car, describing defendant's car by model and number, and that he answered there was nothing due or owing on it. But as to the exact time when the telegram was received, one or two weeks before or after he heard of the theft, he was much shaken in his cross-examination. Defendant was remiss in failing to prove by the hotel record in Miami the date of his arrival and departure.

Counsel for defendant urges us to consider the bad character of most of the State's witnesses; the fact that they were for the most part bootleggers and fugitives from justice and members of the underworld, wherefore unworthy of belief. But being a confessed and proven bootlegger, and at the time of the trial in jail charged with the same, and also having been himself a fugitive from justice, defendant is not in a very good position to call upon a jury of his county or upon us to measure his testimony by any different rule of value from that he would have applied to the other witnesses.

On this and other points of evidence, not necessary to detail, the proposition is that it was not sufficient to warrant the jury's finding; and this is the question we are called upon to decide. Defendant's counsel expresses the greatest surprise that the jury should have convicted the prisoner on such evidence, and the testimony of such witnesses. . The jury saw the witnesses and heard them testify, and as was said above, if they believed the witness Dalton, in connection with

the fact that so recently before the time he mentions the Buick car was stolen, and also in connection with other incriminating facts and circumstances testified to by Cobb and others, they were bound to find defendant guilty. We do not think the evidence he offered on the subject established his absence in Florida, so as to make his defense inconsistent with the State's theory that he committed the crime with which he is charged.

We need not reaffirm the oft repeated proposition of criminal law relied on by defendant's counsel, that the burden is upon the State, if it would convict one of crime, to satisfy the jury, not merely by a preponderance of the evidence, but beyond all reasonable doubt, of the guilt of the accused. Until this is done, the prisoner is entitled as a matter of law to his acquittal. *State* v. *Robinson,* 20 W. Va. 713; *State* v. *Murphy,* 93 W. Va. 477.

In the case at bar, however, if the jury believed the witness Dalton, they could have no reasonable doubt that defendant was guilty. Its weight and credibility was wholly a question for their determination, seldom interferred with by the court. *Thomas* v. *Commonwealth,* 106 Va. 855, 56 S. E. 705. But in *Groety* v. *Commonwealth,* 135 Va. 508, it is said that where the evidence is all in, if the evidence for both the Commonwealth and the accused, regardless of whether the defense be an alibi, or self defense, or what not, leaves a reasonable doubt as to his guilt, the jury must find the prisoner not guilty. And in another recent Virginia case, involving evidence of the prisoner's good character as tending to establish his innocence, the court said: "If, notwithstanding such evidence, they (the jury) are satisfied beyond a reasonable doubt that the defendant is guilty, they should convict, but if such evidence is believed by them as a substantial fact, which disproves the charge by discrediting the witnesses upon whose testimony it rests, or raises in their minds a reasonable doubt of his guilt, they should, notwithstanding the other evidence, acquit." *Troutner* v. *Commonwealth,* 135 Va. 750, 115 S. E. 695.

Applying the principle of these cases, if the jury believed or should have believed that defendant was not in West Vir-

ginia at the place designated by the witness Dalton, on November 20-21st, but in, or on his way to Florida, the establishment of this fact would overcome the evidence of Dalton, on which their verdict mainly rested. The verdict can only be sustained on the theory that they believed Dalton, and disbelieved defendant and his evidence of the alibi. And as the jury are generally the sole judges of the credibility of the witnesses, and of the weight that should be given their testimony, this Court on appeal would not be justified in disturbing their verdict. We could only do so by finding that the evidence does not support the verdict. *State* v. *White,* 66 W. Va. 45; *State* v. *Chafin,* 78 W. Va. 140; *State* v. *Donahue,* 79 W. Va. 260. If the verdict stood wholly on circumstantial evidence, and it was sufficient merely to arouse suspicion, we might perhaps apply the principles of the cases cited and relied on by defendant's counsel. It is only where the verdict is unsupported by the evidence that the court is warranted in overriding the verdict. So the cases cited and urged upon us by counsel hold. *Wheeling Mould & Foundry* v. *Wheeling Steel & Iron Company,* 62 W. Va. 288; *State* v. *Stewart,* 63 W. Va. 597; *State* v. *Kidwell,* 62 W. Va. 466; *State* v. *White, supra.*

The next proposition relied on is that a new trial should have been awarded on the after discovered evidence. To justify such action the evidence must be material, not cumulative, and such as on another trial on the merits of the case would produce the opposite result. *State* v. *Lemon,* 84 W. Va. 25; *State* v. *Stowers,* 66 W. Va. 198; *Lindamood* v. *Potomac Light & Power Company,* 85 W. Va. 85; *Edwards* v. *Keifer,* 92 W. Va. 650.

The affidavits of three witnesses and their cross-examination thereon are mainly relied on, namely, George Milam, Leman Martin and Arthur Lucas. Milam undertook in his affidavit to support defendant and his wife, that they were in Florida at the time the car was stolen. His affidavit was that he left Raleigh County, and arrived at Miami, Florida, on the 14th day of November; that on or about November 22nd, he saw defendant and his wife in Miami, in a Packard car bearing a Kentucky license. This evidence, if true, was merely cumu-

lative of the evidence of defendant and Mrs. Scurlock. But on cross-examination, he was not certain whether it was November 13th, 14th or 15th that he arrived in Miami; and he could not be certain whether it was a week or ten or fifteen days after his arrival there until he saw defendant and his wife. Besides its cumulative character, we do not think this evidence would satisfy any jury that defendant could not have stolen the car and at the same time reached Miami in time to have appeared there as early as the last days of November or the first days of December. A few days difference in time was all important. Such evidence would scarcely overcome the positive evidence of Dalton that he saw defendant in possession of the Buick car on November 21st.

The affidavit of State Policeman Martin could not be considered on this motion; first, because no good reason is shown why he should not have been called to testify upon the trial. The defendant knew that the license tags had been recovered through him; and he was near at hand, and whatever he knew about the character of Dalton or the circumstances of his procuring the tags, and what Dalton said about them, should have been shown upon the trial. The only very significant fact is that Dalton should not have mentioned to the officer anything about seeing defendant in possession of the stolen car, nor any of the circumstances of his finding the tags.

The affidavit of Arthur Lucas, himself shown to be a law breaker and of doubtful character, to the effect that he had been solicited by one Williams, another bad character, living at Huntington, to become a party to a frame-up against Scurlock and to testify falsely with others in an effort to obtain the reward offered by Cobb for the recovery of his car and the apprehension and punishment of the thief, would have related simply to the question whether defendant had not been seen with his brother-in-law, Furgeson, in Ashland. in possession of a Buick car of the same model, but without definite proof that it was the one stolen. It in no way would have effected the evidence of Dalton that he saw defendant in possession of the stolen car. Besides, it related to collateral matters, as the Attorney General says, and it could not be

regarded as good grounds for a new trial. *Wynne* v. *Newman,* 75 Va. 811.

The point of error is predicated on the alleged admission of improper and illegal evidence. This point relates first to the testimony of the witness Cobb, wherein he states he took the numbers off the stolen car and wired the motor car company for confirmation of these numbers. On objection this testimony was not admitted. So the point as to this evidence has no merit.

The other evidence excepted to was that of Cobb on rebuttal, to the effect that he had found under the seat of the stolen car when recovered a road map showing the National Highway from Washington, D. C., to Jacksonville, Florida. The objection to this evidence was that, if admissible, it was evidence in chief and not in rebuttal. Whether it should have been admitted as rebuttal evidence was within the sound discretion of the trial court, and such discretion is rarely, if ever, made the subject of reversal unless the defendant is clearly shown to have been prejudiced thereby. *State* v. *Driver,* 88 W. Va. 479, syl. 5.

Lastly, it is urged that the following remarks of the prosecuting attorney were unjustified, and so prejudicial to the defendant, that they constitute grounds for reversal. They were as follows: ''That on the very night the car was stolen, Fred Furgeon, a brother-in-law of Andy Scurlock, came to Edmunds' filling station, driving a Packard car, that he bought gasoline, that Scurlock had a Packard car which his brother-in-law was driving, and the defendant, Andy Scurlock, was evidently in the stolen car.''

The argument is that while the evidence did show that Furgeson purchased gasoline at Edmunds' filling station on the night the Buick car was stolen and was driving a Packard car, that the evidence of the State as to the guilt of Furgeson for the theft of the Buick car was stricken out and a verdict directed in his favor. But this evidence relating to the purchase of gasoline and his driving a Packard car was not stricken out. It had a bearing on the subject of defendant's guilt, because if the Packard car belonged to defendant, it could not well have been used by him on his trip to Florida

at the time and in the way he claims.  Moreover, Furgeson denied that he purchased gasoline and a spark plug on that night; and denied that he was then at the gasoline station in charge of a Packard car.  If the jury believed the witness, that Furgeson was at the filling station, and that defendant was seen by Dalton about the same hour of the night in the stolen car, or if the witnesses so testified, the remarks of the prosecuting attorney were not unwarranted.  If the witnesses spoke truly, the stolen Buick car in charge of defendant, and the Packard car of ·the same description as that owned by defendant, were traveling on the road at the same hours of the night, not far apart.  As the Attorney General says, the only possible criticism of these remarks of the prosecuting attorney was in his conclusion that the Packard car driven by Furgeson was that of defendant.  But was that an unreasonable inference to be drawn from the testimony under all the other facts and circumstances?  Were the jury not warranted in believing that the car in charge of Furgeson was that of the defendant and that there was some concert of movement between him and Furgeson on that night?  We think they would be justified in so concluding.  If so, the remarks of counsel were not unwarranted.  Unrelated to any other facts and circumstances the ·jury of course might not have been justified in finding that the car driven by Furgeson was the one belonging to defendant; but the fact was not conclusive.  But Furgeson's presence on the road the same night, if defendant was the thief of the car stolen, was a relevant circumstance in connection with defendant's guilt and his alibi sought to be established.  It is only when the remarks of counsel are unjustified by the evidence, and prejudicial, that they will be grounds for a new trial.  *State* v. *Taylor,* 57 W. Va. 228.

The judgment will be                                *Affirmed.*