COMMISSIONER OF PUBLIC SAFETY *vs.* ROBERT L. TREADWAY.

Suffolk. April 9, 1975. — June 13, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Receiving Stolen Goods.     State Police.     District Court,* Review respecting State police.

Evidence before a departmental trial board that a State police trooper violated regulations by failing to mark for identification and log a gun which had been brought to police barracks and which he suspected was stolen, but took it home and kept it for a substantial time, even after he learned through private inquiries that it had been stolen from a certain store, warranted a finding that the trooper had received stolen property within the meaning of G. L. c. 266, § 60, and justified action of the board discharging him from the State police service. [156-161]

PETITION for a writ of certiorari filed in the Supreme Judicial Court for the county of Suffolk on June 27, 1974.

The case was heard by *Wilkins,* J.

*Vincent A. Harrington, Jr. (Frank J. McGee, Jr.,* with him) for the defendant.

*Terence P. O'Malley,* Assistant Attorney General, for the Commissioner of Public Safety.

KAPLAN, J.    State trooper Robert L. Treadway appeals from a judgment of a single justice of this court directing that a writ of certiorari issue to the Municipal Court of the City of Boston ordering the entry of a judgment there which will affirm the action of a departmental trial board discharging Treadway from service with the State police.   A judge of the Municipal Court, on review of the action of the trial board under G. L. c. 22, § 9A,[1] had reversed the trial board and ordered Treadway reinstated with back pay.   We affirm the judgment of the single justice that certiorari should issue as indicated.

Treadway, on the force since 1964, was charged before the trial board with violation of regulations as follows: (a) neglect of duty, with specifications (1) that he had failed to mark a shotgun for identification, (2) that he had converted the gun to his own use, and (3) that he had failed to log the gun in the station log; (b) violation of a criminal law, the single specification being that he had received stolen property (G. L. c. 266, § 60),[2] namely, the gun.   Treadway pleaded guilty to the first and third specifications of the first charge and not guilty to the second specification; he pleaded not guilty to the second charge.   After a trial at which the investigating officer, Captain Frank J. Trabucco, and Treadway testified, the trial board found Treadway guilty of all specifications, and his discharge followed.

There was little if any dispute before the trial board as to the essential facts.   On August 18, 1970, a sawed-off Remington 1100 shotgun, serial number 205859V, was found in rusted condition over the embankment of

---

[1] Quoted from at fn. 3 below.

[2] Quoted from at fn. 7 below.

Route 195; it was brought into the State police barracks at North Dartmouth where Treadway was serving as desk officer. It appears that Treadway suspected that the gun had been stolen and abandoned. In violation of regulations, he failed to log the gun or mark it for identification. He did not place the gun in the contraband room but put it in his own locker. In late September, Treadway carried the gun to Otis Air Force Base, where he had official business, and cleaned it with a solution available there so that it could be test fired; he then returned the gun to his locker. Next month, when he was transferred to South Yarmouth, he took the gun to his home where it remained, with other guns owned by him, for some thirty-one months, until the investigating officer requested its surrender in May, 1973.

Treadway commenced making private inquiries about the history or ownership of the gun in March, 1971, starting with a telephone call to the Remington Arms Company in Ilion, New York. Neither this nor any of a number of other out-of-State telephone calls made by Treadway in his attempt to follow the gun was made at a police location, and none was officially logged. Treadway was able to trace the gun to the Capeway Sports Center in Mattapoisett, and in August or September, 1971, he learned quite definitely from the father of the store owner that there had been a break-in at the store in 1969 and the gun had then been stolen. Nevertheless Treadway did not relinquish the gun to official police custody or return it to the owner; at no time did he cause official note to be taken of it.

When interviewed by Captain Trabucco in early 1973, and again in a written report and in testimony before the departmental trial board, Treadway offered no convincing excuse for his failure to log or mark the gun when he first received it; as to the charges of conversion and receiving stolen property, he conceded that he had been forgetful or negligent, but he said he had no design to keep the weapon as his own, and would have returned

it to the owner if the latter had called for it (though it is not definitely shown that the owner was informed that Treadway actually had the gun). The nub of the case against Treadway with regard to the alleged receiving of stolen property was expressed in the relevant specification, which was established in the proof, that "after receiving . . . [the shotgun] and learning that it had been stolen from the Capeway Sports Center . . . [he] made no effort to return . . . [it] to its rightful owner but retained it in his personal possession for approximately two years, thereby concealing it from its rightful owner."

After the adverse findings by the departmental trial board, which were approved by the Commissioner of Public Safety, resulting in Treadway's dismissal, Treadway petitioned the Municipal Court of the City of Boston for review under G. L. c. 22, § 9A.[3] The judge had before him the transcript of the trial board hearing and he also heard the witnesses who had testified before the trial board. The judge filed a "decision," but as the single justice observed, it did not comprise findings of fact properly so called. The judge did not suggest that the testimony before him differed from that in the transcript of the hearing before the trial board. He held in substance that as matter of law the trial board was not

---

[3] General Laws c. 22, § 9A, as amended through St. 1971, c. 521, reads in pertinent part as follows: "Any person aggrieved by the finding of such trial court may, within sixty days after being notified thereof, bring a petition in the district court within the judicial district of which he resides or in the municipal court of the city of Boston addressed to the justice of the court praying that the action of the departmental trial court be reviewed by the court, and after such notice to the commissioner, as the court deems necessary, it shall hear witnesses, review such finding and determine whether or not upon all the evidence such finding was justified. If the court finds that such finding was justified the action of the departmental court shall be affirmed; otherwise it shall be reversed and the petitioner shall be reinstated in his office without loss of compensation. The decision of the court shall be final and conclusive upon the parties, and a copy of the decision shall be forwarded forthwith by the clerk of the court to the commissioner."

justified on the proof before it in finding Treadway guilty
of receiving stolen property, and the Commissioner's
action was therefore wrong.  The judge did not remark
upon the specification of conversion or the specification
of failure to log, but read the specification of failure to
mark for identification in such a way as to exonerate
Treadway,[4] although Treadway had pleaded guilty to it.[5]

The single justice's duty on certiorari was to search out
any errors of law by the judge of the Municipal Court,
and he found error in that judge's ruling about the suf-
ficiency of the evidence before the trial board.  As that
evidence was equally available to the single justice, and
he was in as good a position as the judge below to ap-
praise it, there was no question of the weight owing by
the single justice to the judge's decision.  The single
justice commented on the scope of review by the judge of
the Municipal Court of the finding of the trial board
under G. L. c. 22, § 9A, in a case where the judge pro-
ceeds to "hear witnesses, review such finding [of the
departmental trial board] and determine whether or not
upon all the evidence such finding was justified," all as
authorized by the terms of § 9A, but that was not a real
question here because the judge had acted on the basis of
the transcript before the trial board.[6]

---

[4] This was a dubious interpretation.  The regulation in question
refers to material relating to a "case," but here, said the judge, there
was not yet a "case" against anyone at the time Treadway received
the gun.  But the regulation may well refer to an incipient "case."

[5] The judge ordered reinstatement with back pay although he had
not ruled on the conversion specification and evidently accepted the
plea of guilty to the specification on failure to log.  Although c. 22,
§ 9A, speaks in terms only of dismissal or reinstatement with back
pay, it would seem evident that where the judge reverses the trial
board as to less than all the matters charged, the appropriate
judgment would ordinarily be neither dismissal nor reinstatement but
a remand to the trial board to fix the appropriate penalty.

[6] Ordinarily there would be no reason to rehear witnesses who had
testified before the trial board; fresh testimony may, however, be

We agree with the single justice that the finding by the trial board that Treadway received stolen goods within the meaning of the statute[7] was amply supported by the evidence.  Treadway suspected from the start that the gun was stolen.  This may be the equivalent of belief that theft had occurred, which, though short of knowledge, is enough for § 60 (*Commonwealth* v. *Boris,* 317 Mass. 309, 313 [1944]); and considering that Treadway took the gun immediately into his private possession where it remained for many months, there is solid support for a conclusion of concealment during that period consummating the offense.  Concealment may consist of no more than action making it more difficult for the owner to discover the property.  *Commonwealth* v. *Matheson,* 328 Mass. 371, 373-374 (1952), and cases cited.  Belief turned into knowledge when Treadway learned of the break-in and theft in Mattapoisett.[8]  Yet concealment in the same sense continued.  When to all this are added the knowing breaches of regulations (*Commonwealth* v. *Carroll,* 360 Mass. 580, 587 [1971]), and stealthy contrivance to keep the entire transaction out of official records, a case is made out that can hardly be gainsaid.  Of course it was open to the trial board to find

useful to clear up ambiguities in the record before the trial board or possibly to enlarge upon that record if necessary.  When the judge makes findings these should take into full account the record before the trial board, and the agency's determination should not be disturbed if it is within reason.  Cf. *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 359 Mass. 211, 212-215 (1971), interpreting G. L. c. 31, § 45, as amended through St. 1955, c. 407, § 2.

[7] General Laws c. 266, § 60, as appearing in St. 1971, c. 681, is in part as follows: "Whoever buys, receives or aids in the concealment of stolen or embezzled property, knowing it to have been stolen or embezzled."

[8] One may be guilty of the § 60 offense when, after receiving goods innocently, he acquires knowledge that they were stolen, and acts to conceal.  *Commonwealth* v. *Kronick,* 196 Mass. 286, 288 (1907).

guilt on the basis of inference from all the circumstances as well as from direct proof. See *Commonwealth* v. *Quish*, 356 Mass. 718, 719 (1969).

The brief for Treadway complains on supposed constitutional grounds of the informal procedure before the trial board, but no such point was taken before the board itself, and the argument misses the point that the question what precautions or safeguards are "due" is not to be answered in the abstract but turns on the character and object of the particular proceeding. See *Gavin* v. *Commonwealth*, 367 Mass. 331, 341-342 (1975).

*Judgment affirmed.*