**STATE of Tennessee, Appellee,**

v.

**Lillian McCRAY, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 22, 1981.

Bruce Kelley, Jr. (At trial only), Asst. Public Defender, Memphis, Walker Gwinn (On appeal only), Asst. Public Defender, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Phyllis B. Gardner, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

Convicted of uttering a forged paper valued at over $200.00, the appellant was sentenced to not less than four nor more than eight years in the state penitentiary. She has appealed presenting three issues for our consideration.

The first issue is one of first impression in Tennessee. The trial began on Tuesday, February 19, 1980. During that day the jury heard the testimony of one witness. At 4:45 P.M., court was adjourned until 10:00 the next morning. When court convened the next day, all parties were present except one juror, Mr. Billy W. Livingston. During the night Mr. Livingston's nine year old daughter had died from a cerebral hemorrhage. Since no alternate juror had been impaneled, the trial was respited until the following Monday, February 25, 1980.

When court opened that morning, the trial judge questioned Mr. Livingston at length on the record concerning his ability to continue to serve. After expressing the court's condolences to Mr. Livingston, the following colloquy occurred between the court and the juror:

Now, if you feel that you can sit as a juror in this case and continue on with the understanding of what has occurred in your immediate family, I will be glad to listen to you about that. I will also completely and fully understand if you feel that you would not rather go on with the case under the facts and circumstances and I'll be glad to listen to you, how you feel at this stage of the proceedings.

JUROR LIVINGSTON: I feel I can go on.

THE COURT: You're absolutely sure of that.

JUROR LIVINGSTON: Yes, sir.

THE COURT: Now, you did hear the testimony of Mrs. Long, the victim in this case, and do you recall her direct and cross-examination?

JUROR LIVINGSTON: Yes, sir.

THE COURT: Are you sure of that?

JUROR LIVINGSTON: (Nodding affirmatively.)

THE COURT: Now, you know a lot has happened since then and if you've got any questions about that, I wish you would tell me now.

JUROR LIVINGSTON: No, sir, I remember.

THE COURT: Do you remember it quite well?

JUROR LIVINGSTON: Yes, sir.

THE COURT: Now, let me say this. What if we should go on with the trial? Will your mind be wandering to any extent, and I can understand if it would, as to what has happened over the past couple of days.

JUROR LIVINGSTON: I don't think so.

THE COURT: You do not think so?

JUROR LIVINGSTON: No, sir.

THE COURT: To the best of your ability can you set aside basically what has happened and be as fair and impartial as you can under the facts and circumstances?

JUROR LIVINGSTON: Yes, sir.

THE COURT: Have you got anything you wish to say about your ability to go on, and I could completely—and I think everybody would understand that.

JUROR LIVINGSTON: No.

THE COURT: You think you can?

JUROR LIVINGSTON: Yes, sir.

THE COURT: Is there any hesitation? You got any hesitation, sir? I'll be glad to listen to you. Do you need a little more time to think about it?

JUROR LIVINGSTON: No, I'm all right.

THE COURT: You sure about that now?

JUROR LIVINGSTON: Yes, sir.

Based upon these answers, the trial judge, who also had a nine year old, ordered the trial to continue.

In her first issue, the appellant questions whether the trial judge should have declared a mistrial under these circumstances.

In *State v. Davis*, 31 W.Va. 390, 7 S.E. 24 (1888), a juror's son died during the trial. The trial court replaced this juror over the defendant's objection. This sudden emergency was held to be a sufficient reason for this extraordinary action.

In *Hawes v. State*, 88 Ala. 37, 7 So. 302, 311 (1890), a juror's wife became seriously ill and a mistrial was declared. In disallowing a plea of former jeopardy, the Alabama Supreme Court stated:

... The critical illness of the wife, and the necessity of her husband's presence to save her life, incapacitated the juror for the performance of his duties as such. We can easily conceive how this state of things might, and naturally would, have rendered this juror incapable of that calm and deliberate consideration and reasoning which is of the essence of the office of juror, and for the absence of which, in any member of the panel, the jury should be discharged.

In *Stocks v. State*, 91 Ga. 831, 18 S.E. 847, 849 (1893), a juror's mother died during the trial, and the jury was discharged. In holding that the action was proper, the Georgia Supreme Court stated that:

One whose mind is disturbed and distracted by sudden grief is certainly in no condition to discharge the grave and responsible duty of trying another for his life. What judge would be in a fit condition to preside on the trial of a capital case, upon being summoned to the deathbed of his wife, his child, or his mother? And would any court hold that a judge who is informed, while trying a case, that his wife has just died, cannot return to his home, and attend her funeral, but must go on with the trial? No man of ordinary sensibilities, it seems to me, would be in a proper state of mind to discharge his functions as a judge on the trial of a case, under such circumstances, and he should not be compelled to do so. . . .

If what has been said is true as to a judge, it is equally true as to a juror. In order to perform his duty properly, he must give his close and undivided attention to the testimony, as delivered by

each witness, and to the law, as given in charge by the court. He must carry both in his mind, and carefully apply the one to the other, and it is often necessary that he should make nice distinctions in the application of the law.... The question to be considered is, not whether the juror, in view of the greater importance of trying the prisoner than of paying the last tribute of affection and respect to his departed mother, should put aside his grief, and proceed undisturbed in the performance of his duty, but whether, as a matter of fact, he is capable of doing this. If not, the ends of justice require that he be discharged from the jury. What was said by the court in the case of *State v. Davis*, supra, where the juror was discharged on account of the death of his son, will apply equally in the present case: Observation teaches us, if, indeed, we have not learned from sad experience, that the natural result of information suddenly imparted to a father of the death of a child, is to unfit him, for the time, to attend to business.

In *Rittenberry v. State*, 30 Ga.App. 289, 117 S.E. 765 (1923), a juror was informed during the deliberation that his wife was seriously ill. The trial judge declared a mistrial. The defendant was again placed on trial a short time later for the same offense and a conviction resulted. On appeal the defendant contested the second conviction on the basis of a plea of former jeopardy.

The appellate court, relying on *Stocks v. State*, supra, held that a mistrial would not furnish a basis for a plea of former jeopardy unless the mistrial was declared without legal cause. The court stated that it is within the sound discretion of the trial judge in such an emergency to allow the jury to disperse.

In *State v. Guthrie*, 145 N.C. 492, 59 S.E. 652, 653 (1907), a juror in a murder case was informed that his child had been killed in an accident. In that case the defendant moved for a mistrial. The trial judge overruled the motion and the trial continued. The judge's decision was affirmed on appeal.

The North Carolina Supreme Court held that in this circumstance the decision whether to declare a mistrial is within the sound discretion of the trial judge. The court noted in that case that the record was silent as to whether the trial was temporarily suspended. The court further noted that while the death of the juror's child imposed a great hardship upon the afflicted juror, the appellant in that case failed to show how this prejudiced his trial.

We recognize the intense grief which must surely overcome any loving parent upon the death of a child. We also recognize that each person must bear this heavy burden in his/her own individual way. Therefore, a hard and fast rule requiring a mistrial would be inappropriate.

■ We, therefore, hold that the decision whether to declare a mistrial when a member of the jury panel is informed of the death of a member of his family rests within the sound discretion of the trial judge, who is ultimately responsible for every aspect of the orchestration of a trial. The question the judge must determine is whether the juror is capable of putting aside his grief and proceeding undisturbed in the performance of his sworn duty. The latitude allowed the trial judge in such situations is, of necessity, broad. One challenging the trial judge's ruling to continue a trial under these circumstances must demonstrate prejudice from the trial judge's refusal to stop the proceedings.

■ In this case the trial judge respited the jury for five days before continuing with the trial. He displayed compassionate concern for the juror's mental condition as he questioned him concerning his ability to continue to discharge his duties. The judge inferred throughout their discussion that he undoubtedly would have declared a mistrial had Mr. Livingston felt that he could not continue. However, the juror was unequivocal in expressing his ability to put aside his grief and continue to perform his sworn duty.

In these circumstances we find no abuse of the trial judge's discretion. This issue has no merit.

This case vividly illustrates the prudence of impaneling one or more alternate jurors in every case as provided by Rule 24(e), T.R.Crim.P.

In the next issue the appellant contends that it was error to allow the testimony of two prosecution witnesses whose names were not endorsed on the indictment.

TCA, § 40–2407, provides that, "(i)t shall be the duty of the District Attorney to indorse on each indictment or presentment, ... the names of such witnesses as he intends shall be summoned in the cause, ...." The purpose of this statute is to prevent surprise to the defendant and to insure that he will not be handicapped in the preparation of his case. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173, 179 (Tenn.1963).

In *Aldridge v. State*, 4 Tenn.Cr.App. 254, 470 S.W.2d 42, 45 (1971), this Court held that, in spite of the mandatory language, the statute is directory only. The appellant has failed to demonstrate how she was prejudiced by this failure, even though the appellant contends that she was surprised at trial when these witnesses testified.

The alleged surprise witnesses were Mrs. Carolyn Floyd, a customer representative of the bank with whom the appellant dealt when she passed the check, and Paulette Hillard, a matron jailer at the Shelby County Penal Farm. Mrs. Floyd approved the check for cashing and her signature appeared on the face of the check. Hence, it would be apparent that Mrs. Floyd would be called to testify. Mrs. Hillard's testimony, directed toward the identification issues, was simply that the appellant owned a set of false teeth. There was no prejudice to the appellant from the introduction of these witnesses' testimony. This issue has no merit.

In the final issue, the appellant contends that the pre-trial identification procedures were unduly suggestive and the admission of testimony relating to the identification was error.

The state asserts that this alleged error was waived by the failure of the appellant to file a pre-trial motion to suppress.

Rule 12(b)(3), T.R.Crim.P., provides that motions to suppress evidence must be raised prior to trial. Failure by a party to timely raise objections which must be made prior to trial constitutes a waiver of those objections, but the court can for cause grant relief from the waiver. Rule 12(f), T.R. Crim.P. This Court has previously held that this failure to timely present a motion to suppress constitutes a waiver, in the absence of "cause shown" for the failure. *Feagins v. State*, 596 S.W.2d 108, 110 (Tenn. Cr.App.1979), *State v. Davidson*, 606 S.W.2d 293, 295 (Tenn.Cr.App.1980).

The record reveals no justification for the failure to present this issue pre-trial. Therefore, this issue was waived.

Finding no merit to any of the issues presented, the judgment is affirmed.

DAUGHTREY and TATUM, JJ., concur.