304 S.E.2d 843

**STATE of West Virginia**

v.

**Henry Jackson OLDAKER.**
(Two cases)

**Nos. 15727, 15765.**

Supreme Court of Appeals of West Virginia.

June 22, 1983.

---

Richard A. Bush, Parkersburg, for appellant.

Harry G. Deitzler, Pros. Atty., Parkersburg, for appellee.

HARSHBARGER, Justice:

The Wood County Grand Jury returned two indictments against Henry Jackson Oldaker in October, 1981. One had four counts about a $70,000 1979 Ford tri-axle dump truck stolen from John Haynes on May 7, 1981, two for receiving stolen property knowing or having reason to believe it had been stolen in violation of W.Va.Code, 61-3-18 [1], and the other two for violations of the same Code section, for aiding in concealing stolen property knowing or having reason to believe it was stolen. The second indictment had fourteen counts, all concerning a 1981 International truck valued at $27,000 that belonged to Ramon Noel, and alleging violations of W.Va.Code,

---

1. W.Va.Code, 61-3-18:

"If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted."

61–3–13 [2], grand larceny, W.Va.Code, 61–3–18, *supra*, and W.Va.Code, 61–3–19 [3], bringing stolen property into the state.

The facts underlying each indictment differ significantly. He was tried on the first on December 14 and 15, 1981, was convicted on one count of receiving and one count of aiding in concealing stolen property, and was sentenced to one year in the Wood County Correctional Center for each conviction, the sentences to run concurrently.

His second trial on the other indictment was February 1–3, 1982. He again was found guilty on one count of receiving and one count of concealing stolen property, and again received one year concurrent sentences.

Oldaker appealed both convictions.

### THE FORD

John Haynes, a truck driver for Shamblin Stone Company, parked and locked the company's 1979 Ford dump truck in a motel parking lot on May 7, 1981, but when he returned early the next morning, the truck was missing. He telephoned his employer, Shamblin, who notified state police of the theft and placed a photographic ad in a Charleston newspaper offering a $3,000 reward for the truck's recovery. A young man called to report having seen a similar truck in Parkersburg near a trailer park. Shamblin, his son, and Trooper Miles from the Parkersburg state police barracks went to the park and saw the truck bed, without cab and chassis, on a hill above where a small construction crew was working.

Miles questioned Oldaker, who was in charge of the construction site, and Oldaker told him he did not know anything about the truck bed, but had noticed it was there one morning. Miles investigated further, saw end loader tracks near the truck bed, and left. He returned later that afternoon with other troopers, and they found a broken taillight lens and several witnesses who had seen the truck intact and then saw it without its cab and chassis; but none who saw Oldaker work on or with it. Another confidential source told police that they might find the remains of the vehicle in a garage at "Jim" Gilbert's automobile upholstery shop.

A trooper was posted at Gilbert's shop while other officers took Gilbert to headquarters for several hours' questioning. They insinuated he may have had something to do with the missing truck and he told them several stories, at least one revision prompted by a "failed" polygraph test; but the last one was that Oldaker had rented the garage from him for $300 cash, and he had given Oldaker the key. He repeatedly told them he thought there was nothing in the garage.

When they took him back to his shop, Gilbert said they could look inside to see if the truck was there. Gilbert and several officers testified, however, that the policemen refused to look without a search warrant. Gilbert, whose curiosity had by then apparently been quickened, suggested that *he* look inside. They told him they could not stop him, that whether he did was up to him, but they could not share even a peek. He looked, he saw, and he described a large

**2.** W.Va.Code, 61–3–13:

"(a) If any person commits simple larceny of goods or chattels of the value of two hundred dollars or more, such person shall be guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars.

"(b) If any person commits simple larceny of goods or chattels of the value of less than two hundred dollars, such person shall be guilty of a misdemeanor, designated petit larceny, and, upon conviction thereof, shall be confined in the county jail for a term not to exceed one year or fined not to exceed five hundred dollars, or both, in the discretion of the court."

**3.** W.Va.Code, 61–3–19:

"If any person shall bring into this State, or shall receive, convert to his own use, or sell, property of any character, of value, which was stolen in another state, and which he knows or has reason to believe was stolen, he shall be deemed guilty of the larceny thereof in the county in which such property may be found, used, converted or sold, and may be prosecuted for such offense therein, and, upon conviction, shall be punished as provided for the offense of larceny committed within this State."

truck to the officers and identified it in a picture they showed him. They later returned with a warrant and seized it.

Oldaker moved to suppress evidence of the truck because Gilbert was an agent for the state and searched his leased garage without a warrant. The trial court decided after an *in camera* hearing that no illegality occurred.

After the state rested, Oldaker moved to dismiss because the admissible evidence was insufficient to submit to the jury, and his motion was denied.

 The Fourth Amendment[4] and West Virginia Constitution, Article III, Section 6[5] proscribe warrantless searches and seizures by the government, except under very limited exceptions. *State v. Farley*, 167 W.Va. 620, 280 S.E.2d 234 (1981); *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980). These constitutional provisions do not apply to searches by private individuals unless they are acting as instruments or agents of the State. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120; *State v. Riser*, 170 W.Va. 473, 294 S.E.2d 461, 466 (1982). *See* Annot., Admissibility, In Criminal Case, of Evidence Obtained by Search by Private Individual, 36 A.L.R.3d 553 (1971 and Supp.).[6] The trial court determined that Gilbert acted independently and was not pressured, coerced or subtly encouraged to search the garage. As in *Riser, supra,* we find that the trial court's ruling was not plainly wrong nor clearly against the weight of the evidence.

Oldaker's argument about evidentiary insufficiency depends upon exclusion of the search evidence. Because it was admissible, the state had enough to go to the jury.

## THE INTERNATIONAL

On May 16, 1981, West Virginia state troopers noticed a truck with a West Virginia license plate but no inspection sticker, travelling along a public way. Its license had expired and also was of a type that belonged on a car rather than a truck. They stopped it, whereupon its passenger, Henry Oldaker, claimed to own it but could produce no registration document. One trooper called his detachment for assistance and a license check. Two more officers arrived, defendant was deposited on the rear seat of a police car, and officers inspected the vehicle. They found that a new front end of a truck frame had been welded to a much older rear section, and that serial numbers had been scraped off the front tires. The aluminum vehicle identification (VIN) plate was suspicious: it was for a 1977 International, but was on the later model truck cab. They removed it and sent it to Charleston for examination for fingerprints.

Trooper Pritchard and Corporal Ratliff questioned Oldaker about his truck, and he told them he had purchased the back end from an insurance company as salvage, and the front from a man whose name and address he had forgotten. (Later, he denied telling them he did not know the man's

---

4. United States Constitution, Amendment IV:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

5. West Virginia Constitution, Article III, Section 6:

"The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirma-

tion, particularly describing the place to be searched, or the person or thing to be seized."

6. Gilbert, as Oldaker's landlord, had no authority to consent to a police search, *see generally*, Annot., Admissibility of Evidence Discovered in Warrantless Search of Rental Property Authorized by Lessor of Such Property—State Cases, 2 A.L.R. 4th 1173 (1980); Annot., Admissibility of Evidence Discovered In Warrantless Search of Property or Premises Authorized By One Having Ownership Interest in Property or Premises Other Than Relative, 49 A.L.R. Fed. 511 (1980), and also had no legal right to enter the garage. The unlawfulness of his entry might found a separate cause of action but is not a basis for suppressing evidence about the stolen truck.

name.) The police drove him home, sans truck, called a wrecker and impounded it.

The wrecker operator recognized the rear to have been part of a wrecked cattle truck he had towed several weeks before. The former owner of that wrecked truck also testified that it was part of his truck that had been disposed of by his insurance company.

Ramon Noel, Vice-President of Hoon, Inc., testified that the cab and engine had belonged to his company and had been missing since April 15, 1981. His stolen 1981 International was worth approximately $27,000 and had an equipment-loading tilt-bed when stolen.

FBI agent William Gaunce testified for the State about the general *modus operandi* of car thieves. He had examined the truck, finding that all serial numbers on the engine and frame had been obliterated either by grinding or welding and could not be raised. The defense vigorously objected to his testimony, unavailingly, and the government rested.

Oldaker's evidence attempted to explain how he came to possess the 1981 International front end. After arranging to purchase the wreck to repair, to haul cattle between Parkersburg and Clarksburg, he posted a notice on his brother's salvage yard's bulletin board seeking parts necessary to repair it. A man who identified himself as John Davis responded, offering to furnish and install the parts for $5,500. He brought the parts to Oldaker and Oldaker paid him a $1,000 cash deposit. His receipt was admitted into evidence. Davis came for two or three days installing the new cab and engine.

Then Oldaker called a carpenter friend, Vingino, to repair broken wooden stakes on the bed. He and Vingino were on their way to Oldaker's Ritchie County farm to pick up lumber for the repairs when he was arrested.

Before they took the vehicle on the road, Oldaker instructed Vingino to put an automobile license plate on it because he had not received title from the insurance company and therefore could not get a license.

He testified that he did not know the International front end was stolen, and denied tampering with any serial numbers. He was unable to locate Davis, who, incidentally, has not been back to get any more money from Oldaker.

Over defense objection, the State called Trooper Pritchard on rebuttal to impeach Oldaker's claim that he never told the officers that he did not know the name of the man from whom he purchased the front of the truck. Pritchard testified that Oldaker had told him and Corporal Ratliff that he did not know the man's name. The State rested again.

Oldaker again moved to dismiss all counts of the indictment (he had done so at the end of the State's case-in-chief) because evidence was insufficient to support a conviction. The court directed verdicts on eleven of the fourteen counts, finding no evidence to support allegations that defendant knew the vehicle was stolen or that he brought a stolen truck into the State.

The jury was dismissed to permit submission of instructions and preparation of the court's charge. At the opening of the next day of trial, Juror Gentry asked to speak with the judge in chambers. With both attorneys present, the juror asked to be excused. He said he was very upset and taking nerve pills because the day before he was served with divorce papers after sixteen years of what he believed to have been a happy marriage. The Judge, reluctant to throw away everyone's work by declaring a mistrial (there was no alternate juror), offered to postpone the trial one day; but the juror chose to finish the case and then be dismissed from the rest of the term.

The jury found Oldaker guilty of aiding in concealing and receiving stolen property.

■ Did the court err by admitting Gaunce's opinion testimony about the *modus operandi* of car thieves; in overruling Oldaker's two motions to dismiss all counts of the indictment for evidentiary insufficiency; by permitting Pritchard's rebuttal testimony; and by refusing to dismiss the distraught juror?

A majority of appellate courts permit expert testimony about *modus operandi*. 3 Wharton's Criminal Evidence, Expert and Opinion Evidence § 615; Annot., Expert testimony as to modus operandi of criminals with respect to particular types of crimes, 100 A.L.R.2d 1433 (1965 and later case service). *See United States v. Maher*, 645 F.2d 780 (9th Cir.1981); *United States v. McCoy*, 539 F.2d 1050 (5th Cir.1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230; *State v. Gentry*, 123 Ariz. 135, 598 P.2d 113 (1979); *State v. Salazar*, 27 Ariz.App. 620, 557 P.2d 552 (1976); *People v. McDaniels*, 107 Cal.App.3d 898, 166 Cal.Rptr. 12 (1980); *Ibn-Tamas v. United States*, 407 A.2d 626 (D.C.App.1979); *Smith v. State*, 247 Ga. 612, 277 S.E.2d 678, 18 A.L.R.4th 1144, *on remand*, 159 Ga.App. 183, 283 S.E.2d 98 (1981); *State v. Gomez*, 101 Idaho 802, 623 P.2d 110 (1980), *cert. denied*, 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378; *Gary v. State*, 400 N.E.2d 215 (Ind.App.1980); *State v. Carter*, 347 So.2d 236 (La.1977); *State v. Gervais*, 394 A.2d 1183 (Me.1978); *People v. Farnsley*, 94 Mich.App. 34, 287 N.W.2d 361 (1979); *Watson v. State*, 94 Nev. 261, 578 P.2d 753 (1978). Oldaker asks us to adopt the minority view as expressed in *People v. Raco*, 68 A.D.2d 258, 416 N.Y.S.2d 849 (1979), but we will not do so.

There is no question about Agent Gaunce's qualifications. In addition to his experience, he personally investigated this crime. He testified that removing serial numbers from the engine, car frame and other places is typical of car thieves. While this may not have been particularly probative of defendant's conduct or knowledge, it tended to prove that part of the vehicle was stolen. *State v. Bail*, 140 W.Va. 680, 88 S.E.2d 634 (1955); *State v. Nazel*, 109 W.Va. 617, 156 S.E. 45 (1930). Syllabus Point 2 of *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981), states our standard of review on admission or exclusion of evidence:

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976) citing Syl. pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).

The trial court did not abuse his discretion.

■ There was barely sufficient evidence to permit a jury to decide about defendant's guilt.

"Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." Syllabus Point 4, *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976). Syllabus Point 5, *State v. Woods*, 169 W.Va. 767, 289 S.E.2d 500 (1982).

■ A trial court also has wide discretion in allowing rebuttal testimony after a party has rested. Syllabus Point 4, *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981); Syllabus Point 8, *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954); *State v. Blankenship*, 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on other grounds*, *State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977); *State v. Scurlock*, 99 W.Va. 629, 130 S.E. 263 (1925). Trooper Pritchard did not testify in the state's case in chief even though he was available. The state correctly contends that his testimony was unnecessary and duplicative in its main case. It called him to impeach defendant's testimony that he initially told police the name of the seller of the truck cab. Pritchard's rebuttal was limited to impeachment, and there was no abuse in permitting it. 6 Wigmore on Evidence § 1873.

■ W.Va.Code, 62–3–7 gives a trial court discretion to dismiss a single juror who is unable to perform his duty, or discharge the entire jury if there is a manifest necessity:

If a juror, after he is sworn, be unable, from any cause, to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place. And in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is manifest necessity for such discharge.

A trial court's decision about a mistrial will only be reversed for abuse of discretion. *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730 (1964), *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30. "The power of a court in a criminal case to discharge a jury without rendering a verdict is discretionary." Syllabus Point 2, in part, *State ex rel. Brooks v. Worrell,* 156 W.Va. 8, 190 S.E.2d 474 (1972).

We have discussed what constitutes manifest necessity to discharge a jury. In *State v. Little,* 120 W.Va. 213, 197 S.E. 626 (1938), we stated that circumstances justifying a mistrial must be forceful. In *State v. Davis,* 31 W.Va. 390, 7 S.E. 24 (1888), we affirmed the discharge of a juror who was upset by the death of his son the night before. We elaborated on specific situations warranting declaration of a mistrial in *Brooks, supra,* 156 W.Va. at 11–12, 190 S.E.2d, at 476:

> Under the provisions of the Code and decided cases, it has been held that where unforeseeable circumstances arise during the trial of a case, such as, illness or death of a juror, the accused, the judge or counsel, *making the completion of the trial impossible,* a manifest necessity to discharge the jury will exist and the declaration of a mistrial will be justified. Code, 62–3–7; *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730. (Emphasis ours.)

The critical language we have emphasized is "making the completion of the trial impossible." This juror was distraught but not incapacitated. He voluntarily decided he could continue to hear the case. In *State v. McCray,* Tenn.Cr.App., 614 S.W.2d 90 (1981), and *State v. Lake,* 257 S.C. 407, 186 S.E.2d 256 (1972), trial courts refused mistrials after distraught jurors were questioned about their ability to continue, and

then they did continue; and these decisions were affirmed on appeal. *See also, Cherry v. Director, State Board of Corrections,* 613 F.2d 1262 (5th Cir.1980), *cert. denied,* 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124.

## THE INDICTMENTS

Oldaker challenges both indictments for failure to allege jurisdiction in any court. It is stipulated that they were in the form suggested in the appendix to our Criminal Rules. Each indictment count revealed the county wherein the crime was alleged to have been committed, and the situs of the grand jury in this manner:

"STATE OF WEST VIRGINIA
COUNTY OF WOOD
No. ――――
STATE OF WEST VIRGINIA,
Plaintiff,
v.
HENRY JACKSON OLDAKER,
Defendant.
COUNT ONE
West Virginia Code: 61–3–18
Receiving Stolen Property
THE GRAND JURY CHARGES:

That on or about the ―――― day of May, 1981, in Wood County, West Virginia, HENRY JACKSON OLDAKER committed the offense of 'receiving stolen property' by unlawfully and feloniously receiving from person or persons unknown to the grand jury one (1) 1979 Ford tri-axle dump truck valued at Seventy Thousand ($70,000.00) Dollars, knowing it had been stolen; which said tri-axle dump truck had in fact been stolen from John Haynes after he parked it on May 7, 1981, against the peace and dignity of the State."

It is obvious that the indictments were returned by a Wood County grand jury, and alleged criminal conduct in Wood County.

## MULTIPLE PUNISHMENTS

■ Defendant's convictions were all violations of W.Va.Code, 61–3–18, *supra,* fn. 1. We find that receiving and concealing a stolen item is the same offense for pur-

poses of punishment. We stated in *State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246, 254 (1982), that concealment for purposes of this statute may mean simply hindering return of property to its rightful owner. Anyone receiving stolen property who has made no effort to return it is chargeable with concealment.[7]

The legislature recognized the coincidence of these events by putting receiving and concealing in the same statute. This differs from cases where single transactions violate separate statutory provisions, *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), or the legislature has specifically authorized cumulative punishment when two statutes proscribe the same conduct, *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). In *State v. Hall, supra,* 171 W.Va. at 223, 298 S.E.2d at 257, we stated in *dicta* that receiving, or aiding in concealment of, stolen property is one offense. We believe the crime is "receiving or aiding in concealing stolen property," and therefore it is incorrect to make one count for receiving, and another for concealing, an item of property. We have found no appellate court authority, either way, on this problem, although other state statutes are similarly worded. See 66 Am. Jur.2d, Receiving Stolen Property, § 4, p. 297.

■ The duplication of counts in Oldaker's indictments was not reversible error, but prosecutors in the future should charge receiving or aiding in concealing, in one count.

■ Oldaker's two convictions and sentences for the same offense violated his constitutional protection against multiple punishments. W.Va. Const., art. III, § 5; *See, State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982).

■ Violation of Code, 61–3–18 is punishable as larceny and Oldaker must be sentenced for conviction for one "larceny" in each case in accord with the juries' verdicts. *State v. Hall, supra; State v. Win-*

ston, 170 W.Va. 555, 295 S.E.2d 46 (1982); *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982).

We reverse his sentence only and remand for resentencing.

Affirmed in part; reversed in part; remanded for resentencing.

---

7. *Accord Trammell v. State,* Tex.Cr.App., 511 S.W.2d 951 (1974); *State v. Moynahan,* 164 Conn. 560, 325 A.2d 199 (1973), *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219; *Commissioner of Public Safety v. Treadway,* 368 Mass. 155, 330 N.E.2d 468 (1975).