STATE *ex rel.* EDWIN ROBERT BROOKS

*v.*

ROBERT M. WORRELL, *Judge, etc., et al.*

(No. 13209)

Submitted June 6, 1972.          Decided July 11, 1972.

Dissenting Opinion July 24, 1972.

*Katz, Katz & Kantor, Norris Kantor,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan, Richard E. Hardison,* Assistant Attorneys General, *D. Grove Moler,* Prosecuting Attorney, for respondents.

BERRY, JUDGE:

This is a proceeding in prohibition instituted under the original jurisdiction of this Court by Edwin Robert Brooks to prohibit the Honorable Robert M. Worrell, Judge of the Circuit Court of Wyoming County, and D. Grove Moler, Prosecuting Attorney of Wyoming County, from proceeding further to try the petitioner on an indictment for "breaking and entering". The petitioner contends that the respondent judge improperly declared a mistrial during the trial of the case, and that the Court should have sustained the petitioner's plea of former jeopardy and should not have set the case for trial again on May 15, 1972. A rule to show cause was issued on May 2, 1972, returnable on May 16, 1972, and was continued until June 6, 1972, at which time the respondent filed a demurrer to the petition and the case was submitted on arguments and briefs.

The facts in the case leading up to the mistrial are undisputed. On the second day of the trial while the petitioner, his counsel, the prosecuting attorney and the judge were in conference in the judge's chambers, Deputy Sheriff McKinney, a state witness who had been left on the witness stand, remarked to the bailiff in the presence of the jury which had remained in the jury box that counsel for the petitioner had kept him in the preliminary hearing before a justice of the peace for seven hours, and that they might be "here" for two or three weeks. The bailiff testified that he was only five or six feet away from the jury box at the time the remarks were made, but that he did not know whether or not the members of the jury heard the remarks because they had been talking among themselves. The bailiff also

stated that McKinney said that Mr. Kantor, an attorney for the petitioner, was "wound up". However, the bailiff stated that he could not say whether the comments were made in a derogatory manner and that he did not feel the remarks were made to influence the jury in any way.

One of the accused who had been indicted with the petitioner for the same crime but who had been granted a separate trial had informed petitioner's counsel that these remarks had been made, which led to the court's inquiry. He testified that after McKinney made the remarks the jury "laughed and giggled". The jurors were not questioned as to whether or not they heard McKinney's remarks.

After this matter had been brought to the attention of the court and the individuals involved questioned, the prosecuting attorney asked Mr. Kantor, counsel for the petitioner, if he were moving for a mistrial and Kantor replied, "We are not moving either way. We are simply presenting it to the Court, putting it in the lap of the Court for the Court to use its sound discretion." The Court then stated it felt that if any information was volunteered by a witness on the witness stand before the jury out of the presence of the accused, it would automatically result in a mistrial; that a mistrial would be declared and the case would be continued until the next term of court. Mr. Kantor then replied that the petitioner would enter a plea of former jeopardy if the state elected to try the petitioner again, since the conduct that caused the mistrial was a result of the actions of the state, namely, one of the arresting officers. The judge then returned to the courtroom and declared a mistrial and dismissed the jury.

The petitioner contends McKinney's remarks were not sufficient to create a "manifest necessity" for the trial court to declare a mistrial on its own initiative and consequently he should not have to stand trial again.

The only issue involved in this case is whether or not the remarks made by the deputy sheriff in the presence of

the jury constituted a manifest necessity warranting the court to declare a mistrial. The pertinent part of the statute, Code, 62-3-7, governing such matter, reads as follows:

" * * * And in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is manifest necessity for such discharge."

The term "manifest necessity" has not been clearly defined and may arise from various circumstances, but the circumstances in any instance must be forceful to warrant a mistrial. In the case of *State v. Little,* 120 W.Va. 213, 197 S.E. 626, a mistrial was declared by the trial court on motion of the state because several witnesses failed to return to court promptly after recessing for lunch. They were excused until 1:30 p.m. and the mistrial was declared at 2 o'clock p.m. and it was held by this Court that the mistrial was not justified. This principle is stated in the second point of the syllabus of the *Little* case in the following language: "The 'manifest necessity' in a criminal case permitting the discharge of a jury without rendering a verdict may arise from various circumstances. Whatever the circumstances, they must be forceful to meet the statutory prescription." It was also held in the same case that the power to declare a mistrial is a "delicate and highly important trust" and must be exercised with extreme care. This principle is stated in point three of the syllabus of the *Little* case, as follows: "The power of a court in a criminal case to discharge a jury without rendering a verdict is discretionary; but the power 'is a delicate and highly important trust' and must be exercised soundly, else the discharge will become in effect an acquittal of the accused under the Constitution, Article 3, Section 5, which inhibits second jeopardy."

Under the provisions of the Code and decided cases, it has been held that where unforeseeable circumstances arise during the trial of a case, such as, illness or death of

a juror, the accused, the judge or counsel, making the completion of the trial impossible, a manifest necessity to discharge the jury will exist and the declaration of a mistrial will be justified. Code, 62-3-7; *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730. It has also been held that where there is an improper separation of the jury in cases where they are required to be kept together, and a verdict of guilty could not be upheld on appeal, a manifest necessity exists to discharge the jury and double jeopardy will not attach on the second trial. *State v. Shelton,* 116 W.Va. 75, 178 S.E. 633; *State v. Burford,* 136 W.Va. 472, 67 S.E.2d 855; *State of West Virginia v. Cartright,* 20 W.Va. 32.

The trial court in declaring a mistrial in this case based its ruling on the grounds that the accused was not present at the time the remarks were made to the bailiff by the witness on the witness stand in the presence of the jury. It is true that the accused must be present during all of the stages of his trial, from the inception of the trial to the final judgment, when anything is done affecting him, and the record must show his presence. *State v. Vance,* 146 W.Va. 925, 124 S.E.2d 252; *State v. Howerton,* 100 W.Va. 501, 130 S.E. 655. However, the record in this case shows that the accused was present, with his attorney, the attorney for the state and the judge in the judge's chambers when matters were being considered that would affect him during the trial. Had he not been present in this manner, a manifest necessity would have been present to compel the court to declare a mistrial. *State v. Thompson, supra.*

We are primarily concerned in this case as to whether or not the remarks made by the deputy sheriff, who was on the witness stand, to the bailiff in the presence of the jury were prejudicial to the accused if they were heard by the jury. The deputy sheriff who made the remarks, and the bailiff to whom they were directed, did not know whether the jury heard the remarks or not. The co-indictee testified that after the remarks were made, some members of the jury "laughed and giggled". It

appears that other members of the jury were talking among themselves at the time. The bailiff was standing about five or six feet away from the jury at the time the remarks were made. The jurors were not questioned by the court as to whether or not they heard the remarks. Before a manifest necessity exists which would warrant the declaring of a mistrial and the discharging of the jury and ordering a new trial, the circumstances must be prejudicial, or appear to be prejudicial, to the accused or the state. It is questionable if the remarks involved in the case at bar were heard by the jury, and even if they had been heard by the jury it would appear they would not have been prejudicial to the accused or the state.

The petitioner contends that his statement that he intended to file a plea of former jeopardy if a retrial was declared was in effect an objection to the declaration of a mistrial. The authorities are not uniform as to whether or not the accused must specifically object to the declaring of a mistrial by the trial court. Annot., 63 A.L.R.2d 782 et seq. In the instant case, although there was not a specific objection to the declaration of the mistrial by the petitioner's counsel, an objection to the declaring of a mistrial may be implied, because petitioner's counsel immediately, after the court stated that he was going to declare a mistrial and continue the case until the next term, replied that the petitioner would enter a plea of former jeopardy if the state elected to try the petitioner again. Certainly, there can be no question that the petitioner did not waive the right to file the plea of former jeopardy.

The case of *People v. Compton,* 98 Cal. Rptr. 217, 490 P.2d 537, is quite similar to the case at bar except that there was not even an implied objection after the court indicated a mistrial would be declared. In that case the defendant's counsel brought to the attention of the trial court that during the recess of a trial one of the alternate jurors had engaged in a conversation with his barber to the effect that he did not like to participate in a trial similar to the one he was called on because it was

hard for him to keep an open mind. The court did not interrogate the alternate juror but instead dismissed him and declared a mistrial. When the court asked the defendant's counsel if he were moving for a mistrial, he replied, "I don't have any motion. I simply want to advise the Court of what has happened." The Supreme Court of California held that there was no legal necessity for the trial court to declare a mistrial, that counsel for the defendant had not consented to the mistrial, and double jeopardy attached prohibiting a retrial.

Therefore, it would appear that under the facts and circumstances of the instant case there was no manifest necessity for the trial court to declare a mistrial and double jeopardy attached to prohibit the retrial of the petitioner. The demurrer to the petition is therefore overruled and the writ prayed for is granted.

*Writ granted.*

HADEN, JUDGE, dissenting:

I must respectfully dissent from the opinion of the majority in this case. My disagreement is not based upon the principles of law enunciated but rather by their application to the facts.

To paraphrase the third syllabus in this case, a manifest necessity warranting the declaring of a mistrial in a criminal case exists when the circumstances are prejudicial or "appear to be prejudicial" to the accused or the state.

Who, in the normal situation, is to be the judge of those "circumstances", the trial court or the reviewing court? Certainly, one would believe that the trial judge occupies the best position to ascertain what actually occurred in his courtroom. The statute in turn also gives him the latitude of discretion to determine how occurrences or circumstance may affect the outcome of the trial: "And in any criminal case the court *may* [emphasis mine] discharge the jury, when it appears * * *

there is manifest necessity for such discharge." Code, 62-3-7.

It is established beyond question in this jurisdiction that in matters where the legislature has reposed discretion in the lower court, the appellate court will not and should not substitute its judgment for that of the lower court unless there has been an abuse of discretion. *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970) and cases cited therein.

In this case the trial court found a manifest necessity and declared a mistrial because testimony in open court occurred before the jury out of the presence of the accused. The state's witness who was sworn and who had given previous testimony remarked that the accused's counsel had kept him on the stand for seven hours in the preliminary hearing and that they might remain in this courtroom for two or three weeks. This conversation to the bailiff occurred while the judge, counsel and accused were in chambers. Technical interpretations aside, it would appear "testimony" was given during the trial outside the presence of the accused. Is it not reasonable to assume that the empaneled jury sitting as near as five feet from the witness' chair in a relatively quiet court-room during a "break" in the proceeding, would naturally continue to focus some attention on the sworn witness and hear his remarks. In view of the evidence that the jury laughed or giggled at the witness' remarks, it would be unreasonable to assume otherwise. Is it reasonable to conclude that the laymen jurors were aware that the "trial" had moved with the accused and the court officers to judge's chambers? To them, the trial occurs in the courtroom and their verdict comes from what they see and hear from the sworn witnesses and arguments of counsel. At least, this is an assumed premise of a fair trial.

Whether those remarks appeared to be prejudicial to a party in the case was a matter for the trial judge to decide. Would he not know more than this Court of the effect

on the jury of any inference that accused's counsel would make the proceeding a lengthy trial? Who knew the habits and human characteristics of this jury panel better?

I cannot conclude from the circumstances of events leading to mistrial that the trial court abused its discretion.

As to the law governing this case, both the salutary principles of Former Jeopardy and Manifest Necessity have as a common touchstone or *raison d'etre* the aim of protecting the accused's rights in a criminal trial.

Trial courts should be, and are, zealously protective of the rights of the accused. This Court should not, even inadventently, strain a rule to place the trial court in the peril of misapprehending a prejudicial "circumstance" when the statute plainly grants the latitude of discretion. It is to the advantage of all parties, the state, the accused and the taxpayer that the trial court retains unencumbered its discretion to continue or discontinue a criminal trial as the circumstances appear to warrant. No application of a rule by an appellate court should create the result of influencing the neutrality of the trial judge in exercising discretion regarding the basic rights of the parties in a criminal trial.

I am authorized to say that Judge Carrigan concurs in the views expressed in this dissent.