584 S.E.2d 191

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Charles G. KEENAN, Defendant Below, Appellant.**

**No. 30851.**

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2003.

Decided June 19, 2003.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Michael J. Meleady, Rule 10 Attorney, Charleston, West Virginia, Attorneys for Appellee.

John R. Mitchell, Sr., Esq., E. Dixon Ericson, Esq., Law Office of John R. Mitchell, Sr., Charleston, West Virginia, Attorneys for Appellant.

PER CURIAM:

This is an appeal by Charles G. Keenan from an order of the Circuit Court of Fayette County sentencing him to 15 years in the State Penitentiary for voluntary manslaugh-

ter. On appeal, he claims that the State failed to respond properly to his discovery requests, and that the State's actions prejudiced the outcome of his trial. He also contends that individuals in the office of the prosecutory attorney who prosecuted him had represented him in previous criminal proceedings.[1] Lastly, he contends that the evidence in his case was unreliable, inconsistent and contradictory and that it was inadequate to sustain a verdict of guilty of voluntary manslaughter.

## I.

## FACTS

The appellant was indicted for killing Mark Lafferty on April 19, 2000. Mr. Lafferty, who was a passenger on an all-terrain vehicle driven by Shaun Tincher, had been shot at close range at approximately 10:30 p.m. on April 19, 2000, after being involved in an altercation with the appellant. Mr. Tincher, who was present on the all-terrain vehicle with Mr. Lafferty, heard the shot, but did not see who fired it. A police search of the area where the shooting occurred produced no weapon or spent cartridges. The shooting occurred under circumstances which suggested either that Mr. Lafferty accidentally shot himself, or that the appellant shot him.

The indictment against the appellant was signed as a True Bill by Paul M. Blake, Jr., the Prosecuting Attorney of Fayette County. Mr. Blake and one of his assistants, Carl Harris, had, approximately 14 years prior to the return of the indictment, represented the appellant in 1986 on a charge of obtaining property by false pretenses, and in 1986–87 on a charge of transferring and receiving stolen property. Those charges had resulted in convictions.

After the return of the indictment, defense counsel moved to disqualify the Fayette County Prosecutor's Office from undertaking the prosecution of the appellant on the ground that a conflict existed as a result of the prosecutor and his assistant, Carl Harris, previously representing the appellant. A hearing was held on the motion, and during the hearing, defense counsel stated that he was not accusing the Prosecutor's Office of impropriety, but he argued that because of the bond created by the attorney-client relationship, the prosecutor should be barred from handling the case, and that a special prosecutor should be appointed. The State responded that the criminal matters were not the same or substantially related and argued that, under the circumstances, the Prosecutor's Office should not be precluded from prosecuting the case. The circuit court indicated that it was inclined to deny the motion, but invited the parties to submit memoranda of law in support of their positions. Memoranda were filed by both sides, and subsequently the court denied the motion for disqualification. In denying the motion, the court found first that the case being tried was in no way connected to the two earlier felonies. The court also essentially found that members of the Prosecutor's Office, other than Mr. Blake and Mr. Harris, were actually conducting the prosecution of the appellant and that Mr. Blake's only involvement was signing of the indictment returned by the grand jury. The court stated that there was no evidence that Mr. Blake or Mr. Harris had obtained any privileged information out of the prior attorney-client relationships which could be adversely used in the case at hand and, for that reason, the court denied the motion.

Defense counsel also filed a Rule 16 discovery motion.[2] In response to that motion, the

---

1. In conjunction with this point, the Court notes that in *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001), it has already addressed the question of the propriety of the Prosecutor's Office initiating recidivist proceedings against the appellant. In the recidivist proceedings, the matters upon which members of the Prosecutor's Office had represented the appellant were plainly material to the question of whether the appellant was a recidivist. As will hereafter appear, the matters upon which members of the Prosecutor's Office had previously represented

the appellant had no bearing on the proceeding involved in the present appeal.

2. In relevant part, Rule 16 of the West Virginia Rules of Criminal Procedure provides:

(D) Reports of examinations and tests. Upon request of the defendant the state shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are with-

State provided defense counsel with a report prepared by Sergeant J.R. Giacalone, a forensic chemist at the West Virginia State Police Forensic Laboratory in South Charleston, West Virginia. The initial report prepared by Sergeant Giacalone indicated that he had sought evidence of gunshot residue from the appellant's body, as well as from the body of the decedent. In the report provided by the State, which was dated June 19, 2000, Sergeant Giacalone stated that gunshot residue was identified on the hands, face and stomach of the appellant. He also stated that particles consistent with gunshot residue were found on samples from the hands of the decedent.

After Sergeant Giacalone's report was produced, the appellant informed his attorney that he had accompanied his daughter while she was target shooting her revolver on the day before the death of the decedent, and he essentially took the position that the residue found upon his body resulted from that activity. In view of this, defense counsel surmised that the residue on the hands of the decedent, together with evidence that the shooting had been a contact wound, supported the hypothesis that the decedent had been armed with a pistol on the evening of the shooting and had attempted to defend himself or retaliate during, or immediately after, the altercation with the appellant and that the pistol had accidentally discharged as he had attempted to extract it from his jacket pocket.

Subsequently, defense counsel filed an additional discovery motion and requested any notes generated by Sergeant Giacalone while tests were being performed and certain other items. As a result of the renewed motion, the State produced three additional pages, including a worksheet and a fax cover sheet dealing with chain of custody of the residue samples. These documents were consistent with Sergeant Giacalone's initial report.

According to the appellant, when trial commenced on December 15, 2000, he was prepared to advance the defense that the victim had died as a result of an accidental, self-inflicted gunshot wound. However, after trial commenced, the State provided defense counsel with a "corrected" forensic report prepared by Sergeant Giacalone. Sergeant Giacalone later testified that this report was prepared on December 15, 2000, when after reviewing his report and notes, he concluded that his original prior report had mixed and misstated the actual test results. The revised, or corrected forensic report, showed that the tests of the decedent's clothing were positive for gunshot residue, but that he, Sergeant Giacalone, had not actually tested swabs from the decedent's hands. The implication of the corrected report was that there was no evidence of gunshot residue on the decedent's hands. The appellant asserts that the effect of the corrected report was to destroy his proposed defense that the decedent had actually shot himself.

In light of the lateness of the production of the corrected forensic report, the appellant moved to suppress the gunshot evidence and prohibit Sergeant Giacalone's testimony. The court denied that motion, and Sergeant Giacalone was permitted to testify. Later, during cross-examination, Sergeant Giacalone produced an extensive file consisting of several dozen pages of computer printout sheets, handwritten notes, graphs with notations and other documents prepared in conjunction with his forensic examination. Shortly thereafter, the State conceded that it was aware of these documents from pretrial conversations with Sergeant Giacalone, but had failed to produce them in response to the appellant's discovery requests. As a consequence of this admission, the trial court concluded that the State had improperly responded to the defense's discovery requests and ruled that the testimony of Sergeant Giacalone was inadmissible. The court also

in the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial.

Rule 16(c) also requires:

(c) *Continuing duty to disclose.*—If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that other party's attorney or the court of the existence of the additional evidence or material.

instructed the jury to disregard the testimony of Sergeant Giacalone.

The other evidence regarding what actually occurred during the shooting was somewhat contradictory and inconclusive. The shooting had occurred at night; the decedent and the appellant had been involved in an altercation; but Mr. Tincher, who was present, could not conclusively state who had fired the shot which killed the decedent.

At the conclusion of the trial, the jury found the appellant guilty of voluntary manslaughter, and the court sentenced him to 15 years in the penitentiary.

As has previously been stated, the appellant claims that the State's failure to respond properly to his discovery requests prejudiced the outcome of his trial, and he also claims that the prosecuting attorney's office should have been disqualified from trying him. Lastly, he contends that the evidence in the case was inadequate to support the verdict ultimately returned by the jury.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 2 of *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994), this Court held that:

> The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case.

*See also,* Syllabus Point 1, *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988).

■ The Court has also indicated that whether a trial court should disqualify a prosecutor, or his office, from prosecuting a criminal defendant is reviewed under an abuse of discretion standard. *See, e.g., State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974).

■ Lastly, the Court has recognized that the denial of a motion for acquittal on the ground that the conviction is not supported by the evidence or that the verdict is contrary to the weight of the evidence should be reviewed *de novo*. In undertaking such a review, every reasonable and legitimate inference fairly arising from the evidence in favor of the party for whom the verdict was returned must be considered and those facts which the jury might properly find under the evidence must be assumed to be true. *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

## III.

### DISCUSSION

■ As has previously been stated, the appellant's first assertion on appeal is that the State failed to respond properly to his discovery requests and that the State's actions prejudiced the outcome of his trial.

In *State ex rel. Rusen v. Hill, supra,* this Court extensively examined the implications of the State's failure to respond properly to a discovery request in a criminal trial. The Court indicated that a defendant's constitutional rights are implicated when discovery fails and noted that discovery is one of the most important tools of criminal justice. The Court also noted that the purpose of Rule 16 of the West Virginia Rules of Criminal Procedure, West Virginia's principal criminal discovery rule, is to protect a defendant's right to a fair trial. Although the Court recognized that while the failure to respond properly to a discovery request is not always fatal to the State's case in a criminal proceeding, the failure under certain circumstances can be fatal.

As previously indicated in Syllabus Point 2 of *State ex rel. Rusen v. Hill, supra,* the principal questions to be resolved in determining whether or not the failure to respond properly to a discovery request is fatal are whether the defendant was surprised by the non-disclosure of a material fact and whether the non-disclosure hampered the preparation and presentation of the defendant's case.

In examining the present case, the Court believes that the record shows rather conclusively that the defendant was surprised by the non-disclosure which occurred. Plainly,

that report initially provided to the appellant indicated that there was powder residue on the victim's hands, and only after trial began was a corrected report produced by the State. That corrected report indicated that the forensic expert had not even examined the victim's hands and thus suggested that there was no basis for the court to conclude that there was powder residue on the victim's hands.

Factually, what occurred on the night of the death giving rise to the charges against the appellant is unclear. The facts are sufficient to support the legitimate inference that the appellant shot the victim. Conversely, the presence of powder residue on the victim's hands would support the legitimate inference that the victim accidentally shot himself. Given the circumstances, this Court believes that the question of whether there was, or was not, powder residue on the victim's hands was a material fact in the case.

The appellant asserts that based upon the forensic results which were provided in response to his discovery requests, his attorney prepared a defense suggesting that the victim had actually shot himself and that the appellant had committed no crime. In this Court's view, the appearance, during trial, of the supplemental and contradictory forensic information that the forensic expert had not actually examined the victim's hands for powder residue, potentially fatally damaged the appellant's defense. In effect, the failure to respond properly to the discovery request did hamper the preparation and presentation of the defendant's case. The Court also believes that the State's failure to turn over the supplemental documentation requested by the appellant magnified and exacerbated the situation.

In *State ex rel. Rusen v. Hill, supra*, and in *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987), the Court indicated that failure to comply properly to a discovery request can justify a range of sanctions, including a new trial, when the noncompliance is material and when the defendant is surprised or preju-

diced as the Court believes the appellant was in the present case.

Given the fact that the nature of the noncompliance in the present case effectively misled the defense in preparing its entire case, the Court believes that the trial court should have granted the defendant a new trial.[3]

■ As has previously been stated, the appellant's second claim is that the prosecuting attorney's office should have been disqualified from presenting the State's case because the prosecutor and his chief assistant had previously served as counsel for the appellant in prior criminal matters.

Three days prior to trial, defense counsel moved to disqualify the entire prosecuting attorney's office on the ground that the prosecutor and his chief assistant had previously represented the appellant in prior criminal matters. As previously stated, the prior representation had occurred many years prior to the present trial and had involved distinctly different criminal charges. The trial court conducted a hearing on the motion, and at the hearing, defense counsel stated that he was not accusing the prosecuting attorney's office of any impropriety and he conceded that the prior charges were not related to the case before the court. The court, at the conclusion of the hearing, invited the parties to submit memoranda of law in support of their respective positions, and the memoranda were supplied on the following morning. Subsequently, the court denied the appellant's motion. In denying the motion, the court found that there were no existing or imagined facts which in any way connected the prior criminal cases with the case before the court. The court also noted that the appellant did not allege the existence of any connection and that neither the prosecuting attorney nor his chief assistant had participated in any fashion in the prosecution of the case at hand except that the prosecuting attorney signed the indictment returned by

---

3. In reaching this conclusion, the Court notes that the trial court did give the jury an instruction to disregard the evidence adduced by the forensic expert after the non-discovery became apparent. The Court also notes, however, that

the prejudice did not result from the fact that the forensic expert testified, but from the fact that the failure of the State to respond properly to the discovery request effectively destroyed the appellant's proposed defense.

the grand jury. Finally, the court found that there was no evidence that the prosecutor or his principal assistant had obtained any privileged information out of their prior attorney-client relationships which could be adversely used against the appellant's interests. Accordingly, the court denied the appellant's motion to disqualify the Prosecutor's Office.

 In Syllabus Point 1 of *Nicholas v. Sammons*, 178 W.Va. 631, 363 S.E.2d 516 (1987), this Court stated that:

> Prosecutorial disqualification can be divided into two major categories. The first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. A second category is where the prosecutor has some direct personal interest arising from animosity, a financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question.

*See also, State v. Ladd*, 210 W.Va. 413, 557 S.E.2d 820 (2001), and *State v. Hottle*, 197 W.Va. 529, 476 S.E.2d 200 (1996).

In the present case, there is no showing that the prosecuting attorney's office in any way acquired privileged information adverse to the appellant's interests in regard to the charges in the present case as a result of the prosecutor and his chief assistant's prior representation of the appellant. Further, after reviewing the facts of the case, the Court cannot find that the prosecutor had such a direct personal interest arising from animosity, financial interest, kinship or close friendship, such that his objectivity and impartiality may be called into question. In view of these circumstances, this Court cannot find that the trial court abused its discretion by refusing to disqualify the Prosecutor's Office.

The appellant's final claim is that the evidence in the case did not support the verdict. After examining the evidence adduced, and considering the inferences arising from it in favor of the State as is required by *State v. LaRock, supra*, this Court believes that there was sufficient evidence to support the verdict and that the appellant's claim on this point is without merit.

## IV.

## CONCLUSION

For the reasons stated, the order of the Circuit Court of Fayette County is reversed, and the appellant is awarded a new trial.

Reversed and remanded.