648 S.E.2d 71

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Julian R. SMITH, Defendant Below, Appellant.**

**No. 33171.**

Supreme Court of Appeals of West Virginia.

Submitted: May 9, 2007.

Decided: June 13, 2007.

Concurring Opinion of Justice Albright June 28, 2007.

Dissenting Opinion of Justice Maynard June 27, 2007.

---

Paula M. Cunningham, Esq., Deputy Public Defender, Wendy A. Campbell, Esq., Assistant Public Defender, Kanawha County, Office of the Public Defender, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, James W. Wegman, Esq., Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case is before this Court upon the appeal of Julian R. Smith from the June 4, 1993, order of the Circuit Court of Kanawha County. This order sentenced Smith to a term of forty years in the penitentiary upon his conviction of the offense of aggravated robbery. Pursuant to an intervening proceeding in habeas corpus, the Circuit Court entered an order on July 18, 2005, reimposing the forty year term and restoring Smith's right to appeal to this Court. The appeal was granted in September 2006 and concerns Smith's alleged participation with three others in the robbery of a Taco Bell restaurant in South Charleston, West Virginia.

Smith contends that the Circuit Court abused its discretion in not dismissing the case upon the appearance at trial of an undisclosed rebuttal witness called by the State. The witness, disclosed after Smith testified before the jury, recanted his pretrial statement, also undisclosed, which supported Smith's defense of alibi, and, instead, gave testimony incriminating Smith in the robbery. Asserting extreme prejudice, Smith argues that the Circuit Court should have declared a mistrial.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon careful examination, this Court finds merit in Smith's assignment of error. As discussed below, manifest necessity for a mistrial is demonstrated in the record in the following respects: (1) the State failed to provide notice of the rebuttal witness whose testimony was elicited to contradict Smith's alibi defense; (2) the State advised Smith that it was unaware of any evidence favorable to Smith and, further, failed to disclose to Smith the pretrial statement of the rebuttal witness which initially had supported Smith's alibi defense; and (3) although stating to the Circuit Court that no formal plea agreement had been made with the rebuttal witness, the State failed to disclose that the witness had been offered the possibility of entering a plea to unaggravated robbery in exchange for his truthful testimony at trial. For these reasons, Smith's conviction is reversed, and the case is remanded to the Circuit Court for a new trial.

I.

Factual Background

At approximately 5:00 a.m. on August 24, 1991, two men, their faces hidden with cloth-

ing, entered a Taco Bell restaurant in South Charleston with a revolver, forced the employees into a walk-in cooler and left the restaurant with $3,088.13. According to the State, the two men were appellant Julian R. Smith and Freeman Caffee, III. They were assisted by Harold Lee Jones, who waited in a nearby car, and Beverly Lynn Pauley, the shift manager at Taco Bell that morning. Pauley, who was Smith's girlfriend, allegedly opened the safe for Smith and Caffee before she too was placed in the walk-in cooler.

After the robbery was reported, Jones, found waiting in the car by the police, was taken in for questioning. The car, a Chevy Lumina, belonged to the Avis Corporation and was rented to appellant Smith's uncle who stated that Smith was going to use it for a trip to Ohio. Neither Smith nor Caffee were found in the vicinity of the restaurant. During the subsequent investigation, a number of items allegedly discarded by Caffee were found in some weeds near Smith's residence on Hanna Drive in Charleston. The items included a Taco Bell bag, various receipts, coin wrappers, empty money bags and some clothing allegedly worn by the assailants.

Caffee, Jones and Smith gave separate statements to the police indicating that they were together at a nightclub called the Warehouse, in Charleston, until shortly after 3:00 a.m. on August 24, 1991. According to Jones, whose statement was given on August 27, 1991, he drove the rental car and dropped Smith off on Second Street in Charleston where Smith's mother lived. He then dropped Caffee off in St. Albans several miles west of Charleston. Jones stated that, on the way back toward Charleston, he

stopped near the Taco Bell to rest because he had been drinking and was tired. He was, thus, in the car when the police found him. Smith, who talked to the police at his mother's house at 6:00 a.m. on the morning in question, maintained that he had been sleeping and was not involved in the robbery.

## II.

### Procedural Background

In April 1992, a Kanawha County grand jury indicted Smith, Caffee, Jones and Pauley for aggravated robbery (by the threat or presenting of a firearm) pursuant to *W. Va. Code*, 61–2–12 (1961).[1] Thereafter, appellant Smith filed twenty-three pretrial motions, several of which requested the State to disclose: (1) information beneficial to the preparation of a defense, (2) exculpatory material, including information relevant to Smith's innocence or which may be used for impeachment and (3) the identity of individuals who have knowledge relevant to the case.

In particular, Smith filed motions: (1) for a list of witnesses, including "those to be called in the State's case-in-chief and on rebuttal," (2) for any statements of any witnesses, (3) for Smith's own statements and "any statements alleged to have been made by any co-defendants which may be considered to be in furtherance of any alleged conspiracy, criminal enterprise or joint criminal activity" and (4) for disclosure of impeaching information relating, *inter alia*, to promises extended to witnesses by the State.[2]

The State replied by stating that it was "unaware of any evidence favorable to the defendant." Moreover, the State's witness

---

1. *W. Va.Code*, 61–2–12 (1961), provides in part: "If any person commit, or attempt to commit, robbery ... by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years." Subsequent amendments to the statute are not relevant to this appeal.

2. The motion for disclosure of impeaching information sought:
    [a]ny and all consideration or promises of consideration given to or on behalf of the witnesses or expected or hoped for by the witness.

By "consideration," defendant refers to absolutely anything, whether bargained for or not, which could be of value or use to a witness or to persons of concern to the witness, including, but not limited to, criminal, civil or tax immunity grants, relief from forfeiture, assistance of favorable treatment or recommendations with respect to any criminal, civil[,] tax court, court of claims, administrative or other legal dispute with plaintiff ... and anything else which arguably could reveal an interest or bias in the witness in favor of the plaintiff against the defense or an inducement to testify or to color testimony.

list filed in the Circuit Court included neither Caffee nor Jones, although Smith was provided with their "rap sheets." The State replied to the motion for statements of witnesses and the motion for the disclosure of impeaching information by asserting that the requests were "beyond the scope" of the law.

In January 1993, Smith was tried separately from his co-defendants. Caffee, who had already entered a plea to unaggravated robbery in the case, was among those called by the State in its case-in-chief. Caffee testified that he had not been driven to his home in St. Albans prior to the robbery. Rather, he stated that he and Smith robbed the Taco Bell with the assistance of Pauley who opened the safe and Jones who waited in the car. After the State rested its case, Smith took the stand as the sole witness for the defense, insisting that he was sleeping at his mother's house in Charleston at the time of the robbery.

Thereafter, the State called Harold Lee Jones to the stand as a rebuttal witness and disclosed to the defense, for the first time, Jones' pretrial statement supporting Smith's alibi defense.[3] Jones testified, contrary to the statement, that he provided the revolver and remained in the car during the period in question after Caffee and Smith exited the vehicle in the area of the restaurant. Following Jones' direct testimony, Smith moved that the case be dismissed, suggesting extreme prejudice based upon the untimely disclosure of exculpatory evidence in the form of Jones' pretrial statement.[4] In addition, Smith argued that Jones should have been called during the State's case-in-chief. During the ensuing argument, the State told the Circuit Court that there was "no plea agreement" between the State and Jones. The Circuit Court refused to dismiss the case, and, on cross-examination, Jones' pretrial statement was used in an effort to impeach his inculpatory testimony. During cross-examination, Jones stated that the State had offered him the possibility of entering a plea to unaggravated robbery in exchange for his truthful testimony at trial.

The jury found appellant Smith guilty of aggravated robbery, and on June 4, 1993, he was sentenced to a term of forty years in the penitentiary. As stated above, he was resentenced on July 18, 2005, for purposes of appeal to this Court.[5]

### III.

#### Standard of Review

Pursuant to *W. Va.Code*, 62–3–7 (1923), a circuit court may discharge a jury in a criminal case during trial if it appears that there is "manifest necessity for such discharge." As syllabus point 1 of *State v. Shelton*, 116 W.Va. 75, 178 S.E. 633 (1935), holds: "In the trial of a criminal case the trial court, acting under Code, 62–3–7, may, for manifest necessity, discharge the jury and order a new trial. Such action will not afford basis for a plea of former jeopardy." Syl. pt. 1, *State ex rel. Bailes v. Jolliffe*, 208 W.Va. 481, 541 S.E.2d 571 (2000). *See*, syl. pts. 1 and 3, *State ex rel. Brooks v. Worrell*, 156 W.Va. 8, 190 S.E.2d 474 (1972), employing the term "mistrial" in that context and noting that, before a manifest necessity exists warranting such a discharge of the jury, the circumstances must be "forceful" and "prejudicial" to the accused.[6] Accordingly,

---

3. It should be noted that earlier, during the State's case-in-chief, the Circuit Court granted the request of Smith's counsel that the State provide reports and witness statements, not previously disclosed, prior to the State's witnesses taking the stand. As Smith's counsel explained to the Circuit Court: "[w]e're trying to read these and listen to the testimony at the same time, which makes it hard to do an appropriate cross-examination." No such advance disclosure of Jones' pretrial statement, however, was made.

4. In this appeal, Smith indicates that his motion to dismiss was the functional equivalent of a motion for a mistrial.

5. As reflected in the June 4, 1993, order, Smith entered pleas of guilty in May 1993 to murder of the first degree and murder of the second degree. Those convictions, under a separate indictment from the one charging aggravated robbery, are not related to the matters concerning this appeal.

6. 1, F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 1–7(F) (4th ed.2000), states in part: "A defendant's motion for a mistrial should be granted only if during the trial there occurs an error or legal defect in the proceedings or conduct outside or inside the courtroom resulting in substantial and irreparable prejudice to the defendant's case." In that regard, Rule 26.3. of the West Virginia Rules of

this Court recognized in *State v. Swafford,* 206 W.Va. 390, 395, 524 S.E.2d 906, 911 (1999), that the decision to declare a mistrial and discharge the jury "is a matter within the sound discretion of the trial court." *State v. Brewer,* 204 W.Va. 1, 5, 511 S.E.2d 112, 116 (1998); *State v. Williams,* 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983).

## IV.

### Discussion

This Court has "traditionally accorded to the trial judge broad discretion in the admission of rebuttal evidence." *State v. Massey,* 178 W.Va. 427, 433, 359 S.E.2d 865, 871 (1987). *State v. Oldaker,* 172 W.Va. 258, 264, 304 S.E.2d 843, 849 (1983) (A trial court has wide discretion in allowing rebuttal testimony after a party has rested.) *See also, State v. Scurlock,* 99 W.Va. 629, 130 S.E. 263 (1925), indicating that the admission of rebuttal evidence is within the discretion of the trial court and that the exercise thereof is rarely reversed, "unless the defendant is clearly shown to have been prejudiced [.]" 99 W.Va. at 638, 130 S.E. at 267.[7]

As applied to this case, however, the above principle must be viewed in the context of the West Virginia Rules of Criminal Procedure and the pretrial motions and responses filed by the parties herein. Pursuant to Rule 16 concerning discovery, a defendant is entitled: (1) to a list of witnesses the State intends to call in its case-in-chief and (2) to inspect and copy papers or documents "which are material to the preparation of the defense" or are intended for use by the State as evidence in chief at trial. The Rule further provides a continuing duty to disclose and sanctions for the failure to furnish discoverable material.[8]

More specifically, Rule 16(e). states that the discovery of alibi witnesses is governed by Rule 12.1. The latter Rule, in subsection (b), provides that, upon notice of an alibi defense, the State shall disclose "the names and addresses of the witnesses upon whom the State intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witness to be relied on to rebut testimony of any of the defendant's alibi witnesses."

Nevertheless, the failure of the State to disclose rebuttal witnesses before they take the stand, and even such witnesses in alibi cases, has not required the reversal of a criminal conviction. In *State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995), this Court rejected the defendant's assertion that the appearance at trial of an undisclosed rebuttal witness required the setting aside of the defendant's sexual assault conviction. The witness, called by the State, testified that the defendant had a reputation for untruthfulness. This Court, in *Roy,* held that, inasmuch as the defendant failed to request a recess or a continuance in order to prepare a challenge to the witness' testimony, the non-disclosure did not warrant disturbing the conviction. In so ruling, however, this Court noted that "even rebuttal witnesses should be disclosed when the State has a reasonable anticipation that they will be used during trial." 194 W.Va. at 286–87, 460 S.E.2d at 287–88.

Similarly, in *State v. Miller,* 195 W.Va. 656, 466 S.E.2d 507 (1995), the defendant challenged his sexual assault convictions by asserting, *inter alia,* that he was prejudiced at trial by an undisclosed rebuttal witness who gave testimony contrary to the defendant's alibi defense. Although the defendant maintained that he moved out of the county prior to the assaults, the testimony of the rebuttal

Criminal Procedure suggests that both the State and the defendant have a right to "comment on the propriety" of an order granting a mistrial.

7. Rule 611(a). of the West Virginia Rules of Evidence provides, in part, that a circuit court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence [.]"

8. Rule 16(d)(2). states in part:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

witness concerning the school records of the defendant's children suggested that the defendant may have been in the area during the period in question. This Court, in *Miller*, affirmed the convictions because: (1) the testimony of the rebuttal witness was limited to the issue of the defendant's residence, an issue the defendant raised, and (2) the defendant, upon the appearance of the witness, failed to request a recess or continuance of the proceedings.

■ Significant guidance in this area of the law is found in syllabus point 2 of *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994), in which this Court observed: "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. pt. 1, *State v. Keenan*, 213 W.Va. 557, 584 S.E.2d 191 (2003). In *Rusen*, this Court upheld the dismissal of an indictment because of the State's failure to obtain and disclose corporate records in an embezzlement case. As this Court stated:

> We believe that it is necessary in most criminal cases for the State to share its information with the defendant if a fair trial is to result. Furthermore, we find that complete and reasonable discovery is normally in the best interest of the public. One consequence of full and frank discovery is that it may very well encourage plea negotiations. As Dean Pye has noted: ... "It may be impossible for counsel to make any intelligent evaluation of the alternatives if he knows only what his client has told him and what he has discovered on his own. [33 F.R.D. 82, 83]"

193 W.Va. at 139, 454 S.E.2d at 433. As the *Rusen* opinion concluded: "[W]e do not mean to suggest that a defendant has a right to fabricate a defense, but we strongly note that our Rules of Criminal Procedure have provided a right to discovery, and correspondingly, a right to devise a defense and trial strategy on the basis of the evidence disclosed by the prosecution." 193 W.Va. at 143 n. 14, 454 S.E.2d at 437 n. 14.

■ When an undisclosed rebuttal witness in an alibi case is called by the State and the defendant objects on the basis of surprise, prejudice and an alleged violation of the discovery rules, the Circuit Court is faced with the difficult task of having to consider an appropriate sanction at a moment in the case when pretrial matters, evidentiary matters before the jury and the probable outcome of the trial are, as quoted in *Rusen*, "seen through a glass, darkly." 193 W.Va. at 143, 454 S.E.2d at 437. In the case before us, however, the Circuit Court's consideration should have been less difficult because, when Jones was called as a rebuttal witness, his August 27, 1991, statement supportive of appellant Smith's alibi was only then revealed for the first time, after the State had represented during the discovery process that it was unaware of any evidence favorable to Smith. In addition, Jones testified that he was offered the possibility of entering a plea to unaggravated robbery, after the State, though literally correct, had represented to the Circuit Court, and Smith, that no plea agreement with Jones had been made. As stated above, Smith moved prior to trial for: (1) a list of the State's witnesses, including those to be called on rebuttal, (2) statements of co-defendants, (3) information relating to promises extended to State witnesses, (4) information beneficial to the preparation of a defense and (5) exculpatory material.[9]

---

**9.** Smith maintains that the August 27, 1991, statement given by Jones to the police was exculpatory insofar as it was consistent with his alibi defense. Thus, he cites the decision of the Supreme Court of the United States in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which holds that the suppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material to either guilt or punishment. Similarly, this Court stated in syl-

labus point 4 of *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), that "[a] prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." W. Va. Const. art. III, § 10; syl. pt. 4, *State v. Kennedy*, 205 W.Va. 224, 517 S.E.2d 457 (1999). In that regard, it should be noted that Rule 26.2(a) of the Rules of Criminal Procedure providing for the

Although no motion was made for a recess or a continuance when Jones was called to testify, his pretrial statement was not properly revealed in violation of Smith's request and was only disclosed just prior to him taking the stand. This failure to disclose during the discovery in the case created clear prejudice to Smith's ability to prepare his defense. Furthermore, the State's dilatory disclosure, apparently precipitated by the trial court's requirement that witness' statements be disclosed prior to a witness taking the stand, does nothing to minimize this prejudice. We conclude that Smith is correct in his assessment that Jones could have been included in the State's case-in-chief. Beyond contradicting Smith's assertion that he was at his mother's residence at the time of the robbery, Jones testified that before he, Smith and Caffee drove to the Taco Bell, they went to Jones' house where he got a .357 Magnum revolver and gave it to Smith. Thus, the State must have anticipated that Jones would be used at trial. *Roy, supra. See,* 1, F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6–11(D)(3)(b) (4th ed.2000) (indicating that rebuttal is not proper if it could have been presented in the case-in-chief).

Accordingly, this Court is of the opinion that, viewing the record in its entirety, the calling of Harold Lee Jones, an undisclosed rebuttal witness, whose pretrial statement and pending plea agreement were also undisclosed, denied Smith a fair trial and constituted grounds for a mistrial based upon manifest necessity. The transgressions which occurred were prejudicial both to Smith's preparation of a defense and at trial. A reversal and remand for new trial is, thus, appropriate because this case includes additional factors which plainly distinguish it from the circumstances found in *Roy* and *Miller, supra,* in which the convictions were affirmed.

disclosure of statements of witnesses does not include language concerning exculpatory material.

1. *See* e.g. W.Va. R.Crim. P. 12.1(b) (requiring disclosure by the State of witnesses to be relied on to rebut defendant's alibi witnesses.)

## V.

### Conclusion

Upon all of the above, this Court holds that the Circuit Court abused its discretion in this case in not granting a mistrial based upon manifest necessity. Therefore, the orders of the Circuit Court of Kanawha County, West Virginia, entered on June 4, 1993, and July 18, 2005, with regard to appellant Smith's conviction and sentencing for aggravated robbery are reversed, and this case is remanded to that Court for a new trial.

Reversed and Remanded

ALBRIGHT, Justice, concurring.

I fully agree with the outcome reached by the majority in this case as the defendant was denied a fair trial due to the State's failure to disclose information which was not only relevant to the preparation of the defense plan but is also required by the West Virginia Rules of Criminal Procedure [1] and ordered by the trial court.[2]

What is most disconcerting about this case is that the State refused to disclose *three* significant pieces of information which the defense had specifically and repeatedly requested by pretrial motion in order to adequately prepare a trial defense. As the majority opinion makes clear, the State failed not only to disclose the rebuttal witness, it withheld the statement the rebuttal witness had initially given to the police directly related to the defendant's alibi defense, and it apparently lied about any type of plea agreement offered to the witness in exchange for his rebuttal testimony. The dissent questions that manifest necessity for a mistrial exists because it examines each of these omissions separately and therefore dilutes the cumulative significance of the State's improper actions. It is that cumulative effect of the State's willful or inadvertent suppression of this evidence that establishes such necessity which demands that a new trial be

2. *See State v. Smith,* 220 W.Va. 565, 571, 648 S.E.2d 71, 77, 2007 WL 1729991 * n. 3 ( June 13, 2007).

had. For some reason the dissent refuses to acknowledge that the State's actions created a less than level playing field by withholding information that could prove beneficial to the *development* of the defense. The dissent filed in the case attempts to discount the detrimental effects of the State's intransigence by proceeding to divine what the jury might have done had the defense been given a level playing field. That is a flight of fantasy in which we should not participate.

Our system of justice, based on the rudimentary principle that a person is considered innocent until *fairly* proven guilty, was respected and preserved by the decision reached in the majority opinion. Accordingly, I concur.

I am authorized to state that Justice Starcher joins in this concurring opinion.

MAYNARD, Justice, dissenting.

In this case, the majority bootstraps a few arguable disclosure violations into cause for a mistrial based on manifest necessity.

The majority finds that manifest necessity for a mistrial is appropriate because the State failed to provide notice of a rebuttal witness; the State failed to disclose Jones's pretrial statement which the majority deems to be exculpatory; and the State failed to disclose that Jones had been offered the possibility of entering a plea to unaggravated robbery in exchange for his testimony. This Court has held that "[b]efore a manifest necessity exists which would warrant the declaring of a mistrial and the discharging of the jury and ordering a new trial, the circumstances must be prejudicial, or appear to be prejudicial, to the accused or the state." Syllabus Point 3, *State ex rel. Brooks v. Worrell,* 156 W.Va. 8, 190 S.E.2d 474 (1972). It is clear that the alleged errors cited by the majority were not prejudicial to the defendant.

First, the majority readily acknowledges that the failure of the State to disclose a rebuttal witness in an alibi case before the witness testifies does not require the reversal of a criminal conviction. As noted by the majority, in *State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995), we held that the nondisclo-

sure did not necessitate reversing the conviction because the defendant did not request a recess or a continuance in order to prepare a challenge to the witness's testimony. Also, in *State v. Miller,* 195 W.Va. 656, 466 S.E.2d 507 (1995), this Court affirmed the conviction where an undisclosed rebuttal witness gave testimony contrary to the defendant's alibi defense because, *inter alia,* the defendant failed to request a recess or a continuance of the proceedings. In the instant case, the defendant did not move for a recess or a continuance when Jones was called to testify. Therefore, application of our precedent in *Roy* and *Miller* mandates that no reversible error occurred and likewise no manifest necessity for a mistrial.

Second, I do not believe the defendant was prejudiced by the State's failure to disclose Jones's pretrial statement. Significantly, it is questionable whether the statement is exculpatory. At trial, the defendant testified that he was sleeping at his mother's house in Charleston at the time of the robbery at approximately 5:00 a.m. Jones indicated in his pretrial statement that he dropped the defendant off at the house in Charleston at 3:00 a.m. Thus, even if the jury had believed Jones's pretrial statement, the statement is not inconsistent with the fact that the defendant robbed the Taco Bell two hours later at 5:00 a.m. In addition, I fail to see, and the majority does not explain, how the State's failure to disclose the statement hampered the defendant's preparation of his case. Finally, I do not believe, in light of the strong circumstantial and physical evidence of the defendant's guilt, that disclosure of Jones's pretrial statement would likely have changed the outcome of the trial. Therefore, any error in the State's failure to disclose Jones's pretrial statement was harmless and certainly did not necessitate a mistrial based on manifest necessity.

Finally, I am at a complete loss as to how the State's failure to disclose that Jones had been offered the possibility of entering a plea to unaggravated robbery in exchange for his testimony prejudiced the defendant. Jones testified at trial that he was offered the possibility of a plea. Because the jury heard this evidence, how could the nondisclosure of

the plea offer prior to trial amount to prejudicial error?

In sum, there simply was no basis in this case for the grant of a mistrial based on manifest necessity. When one considers the totality of the evidence at trial, it is clear that the defendant had a fair opportunity to prepare and present his defense. Any surprise to the defendant arising from the State's nondisclosure could easily have been dealt with simply by moving for a recess or continuance to prepare to challenge Jones's testimony. That the defendant was unsuccessful in his defense is not due to any nondisclosure on the part of the State but rather to the substantial evidence of guilt. The bottom line is that the defendant was properly tried, and the jury, which heard all of the relevant evidence, found the defendant guilty of aggravated robbery. There simply is no sound legal reason why this conviction should not stand.

Accordingly, I dissent.