STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**vs.  No. 17-0395 (Cabell County No. 15-F-468)**

**DANIEL BAUMGARDNER,**
**Defendant Below, Petitioner**

**FILED**

**November 5, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Daniel Baumgardner, by counsel Matthew Brummond, appeals from an order filed on March 29, 2017, by the Circuit Court of Cabell County. That order sentenced the Petitioner to five to twenty-five years of imprisonment,[1] upon his conviction by a jury of first degree sexual abuse of a minor. In this appeal, the Petitioner argues that the trial court improperly allowed the State, represented by Patrick Morrisey, Attorney General, Caleb A. Ellis, Assistant Attorney General, and Gordon L. Mowen, II, Assistant Attorney General, to call an undisclosed rebuttal witness.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The record shows that in August of 2015, the victim, J.B.[2] was visiting the home of her grandfather.[3] The Petitioner, who was a neighbor of J.B.'s grandfather, was also

---

[1] The Petitioner's sentence was to be served on home confinement.

[2] It is our custom to use the initial of a victim in a sensitive case like this. *See, e.g., In re: S.H.,* 237 W. Va 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40 (restricting use of personal identifiers in cases involving children).

1

visiting the home. At some point during the evening hours, J.B. went outside alone and sat in a chair that was inside of a tent. J.B. was waiting on her younger sister to come outside so that they could play the game of tag. The Petitioner came outside and walked to the tent. While inside the tent, the Petitioner touched J.B. in her vaginal area. J.B. described the encounter during the trial as follows:

> Q. Okay. Did his hand go under your clothes or was it on top of your clothes?
> A. On top.
> Q. On top of your clothes. Okay. When Daniel did that to you did he say anything?
> A. Yes.
> Q. What did he say?
> A. He said when people was coming he was going to stop.
> Q. When somebody was coming he was going to stop. Okay. Did he stop at some time?
> A. Yes.
> Q. Okay. Did somebody come?
> A. Yes.
> Q. Did he say anything else to you –
> A. No.

Several weeks after the incident, J.B. was in a car with her mother when she decided to inform her of the Petitioner's conduct. J.B.'s mother testified as follows:

> Q. And when she said to you . . . she said, "Mommy" – she was scared. She didn't want to get in trouble, what did she tell you? Or what did you say to her? What did you say?
> A. I told her that she wasn't going to be in – I could tell something was wrong. I knew something wasn't right. And I told her nothing – she wasn't going to be in no trouble, to tell Mommy what was going on. And so I stopped the car. I pulled over and that is when I started talking to her. She told me that Daniel had touched her no-no spot at Paw-Paw's.
> Q. Now, her no-no spot. Okay? Are you familiar with what that means for her – her no-no spot?
> A. Yes. I taught her that.

---

[3] J.B.'s mother and younger sister were also visiting the home. J.B. was five years old at that time.

2

Q. You taught her what her no-no spot is? And what did you tell – what area – when you said "no-no spot" what were you telling her was her no-no spot?

A. Her private area in between her legs.

Q. Her vaginal area?

A. Yes, correct.

J.B.'s mother reported the incident to the police. After an investigation was completed, the Petitioner was indicted by a grand jury in October of 2015, on one count of first degree sexual abuse.

A jury trial was held in December of 2016. The State called J.B. and three other witnesses during its case-in-chief. The Petitioner testified and called an expert witness during his case-in-chief. The Petitioner denied touching J.B. and informed the jury that after he was indicted, he continued to socialize with J.B's grandfather. Specifically, the Petitioner testified that, after he was indicted, he and J.B.'s grandfather "just sat around, watched TV, drink a few beers, or sat outside."

The State thereafter called J.B.'s grandfather, as a rebuttal witness, to testify about his relationship with the Petitioner after he was indicted. The Petitioner objected on the limited ground that the grandfather was not named "on a witness list." The trial court overruled the objection. J.B.'s grandfather testified that he had no relationship with the Petitioner after the Petitioner was indicted. The jury ultimately convicted the Petitioner of first degree sexual abuse. He was sentenced to five to twenty-five years imprisonment to be served on home confinement. This appeal followed.

The sole issue presented in this case is whether the trial court committed error when it permitted the State to call an undisclosed rebuttal witness. We have held that "[t]he admissibility of evidence as rebuttal is within the sound discretion of the trial court, and the exercise of such discretion does not constitute ground for reversal unless it is prejudicial to the defendant." Syl. pt. 1, *State v. Dietz*, 182 W. Va. 544, 390 S.E.2d 15 (1990) (internal quotations and citations omitted). It has been held that "[r]ebuttal evidence is based on fairness. When the defendant brings out new matters, fairness dictates that the [prosecution] be given a reasonable opportunity to rebut the new evidence, since the [prosecution] cannot be expected to anticipate the defendant's case." 1 Louis J. Palmer, Jr., et al., *Handbook on Evidence for West Virginia Lawyers*, § 611.03[2][d] (6th ed. 2015). *See also* Syl. pt. 2*, Dietz,* 182 W.Va. 544, 390 S.E.2d 15 ("Where a criminal defendant's witness on direct examination raises a material matter, and on cross-examination testifies adversely to the prosecution, it is proper for the trial court to allow the prosecution to present rebuttal evidence as to such matter.").

In this appeal, the Petitioner contends that "the State should have anticipated calling the grandfather for rebuttal, and, therefore, the State should have disclosed him as a witness." In support of this argument, the Petitioner cites to the decision in *State v. Smith*, 220 W. Va. 565, 648 S.E.2d 71 (2007). In *Smith,* the defendant was convicted of aggravated robbery and sentenced to imprisonment for forty years. One of the issues raised on appeal involved the State's use of a rebuttal witness who was not disclosed until the trial. Relying upon language from the decision in *State v. Roy*, 194 W. Va. 276, 460 S.E.2d 277 (1995), the opinion in *Smith* "noted that 'even rebuttal witnesses should be disclosed when the State has a reasonable anticipation that they will be used during trial.' 194 W. Va. at 286-87, 460 S.E.2d at 287-88." *Smith*, 220 W. Va. at 569, 648 S.E.2d at 75. The opinion in *Smith* found that the State's failure to disclose the rebuttal witness prior to trial was reversible error for several reasons. First, the opinion found that the rebuttal witness could have been called in the State's case-in-chief because he was a co-defendant. Second, the opinion found that the rebuttal witness had previously given the State exculpatory evidence that was never disclosed to the defendant. Third, the opinion found that the rebuttal witness had a pending plea agreement with the State.

The facts of the instant case are distinguishable from the facts in *Smith*. First, there was no reason for the State to call J.B.'s grandfather during its case-in-chief, because he had no substantive, non-redundant testimony regarding the facts of the crime.[4] Second, the Petitioner's testimony that he continued to socialize with the grandfather subsequent to his indictment was an attempt to make the jury believe that the grandfather thought Petitioner was innocent. Therefore, Petitioner's testimony made the grandfather a necessary witness. Third, the State could not have reasonably anticipated calling the grandfather as a rebuttal witness. There was no evidence that the State was aware, prior to trial, that the Petitioner was going to testify falsely about his relationship with the grandfather after the indictment. Consequently, we find no error in the trial court's ruling that permitted the State to call the grandfather as a rebuttal witness.

The Petitioner also contends that he was prejudiced by the grandfather's testimony because the grandfather attempted to inform the jury of another improper incident between the Petitioner and the victim. During direct examination of J.B.'s grandfather by the State, the following exchange occurred:

---

[4] The only relevant testimony that the grandfather could provide during the State's case-in-chief was the fact that the Petitioner was at his home at the time of the incident and that a tent was on his property. The grandfather's testimony on this matter would have been redundant, because the victim and her mother provided the jury with that information. Further, the Petitioner did not dispute that he was at the grandfather's home at the time of the incident.

Q. Okay. Were you aware of the charge in this case when it came out when he got charged?

A. Yes, I do remember. I remember that. But the date, I couldn't tell you exactly the date.

Q. After that – he was charged after this came out, did you have any type of contact with Mr. Baumgardner?

A. No.

Q. Did you have him coming over to your house –

A. No.

Q. – or go over to his house at all?

A. No.

Q. Socializing?

A. I wouldn't even speak to him.

During cross-examination of J.B.'s grandfather by defense counsel, the following exchange occurred:

Q. Did you socialize?

A. At that point I didn't have nothing to do with the boy.

Q. So did you accuse him of touching [J.B.]?

A. I didn't accuse him of anything, but I tell you one thing I did catch him do. I was coming out of the kitchen with the door open and he had my granddaughter in his lap and he had his hand –

The Court thereafter stopped further testimony by J.B.'s grandfather. The Petitioner objected on the ground that the testimony was "case-in-chief kind of evidence," and moved for a mistrial on the grounds that he was not made aware of the grandfather's testimony before trial. The circuit court denied the motion for mistrial.

After a careful review of the State's questioning of J.B.'s grandfather, we find that the Petitioner invited the error complained of on appeal. The State did not ask the grandfather if he had accused the Petitioner of assaulting J.B. The State's questioning was short and limited to the issue of whether the grandfather maintained a relationship with the Petitioner after the indictment was returned. It was the defense counsel who strayed beyond the limited questions by the State and asked the grandfather if he had accused the Petitioner of assaulting J.B. Defense counsel's question opened the door for the inadmissible testimony that is now being complained of on appeal. Our cases have been quite clear in holding that "[a] judgment will not be reversed for any error in the

5

record introduced by or invited by the party asking for the reversal." Syl. pt. 21, *State v. Riley*, 151 W. Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Serv., Inc.*, 210 W. Va. 498, 558 S.E.2d 298 (2001). This Court explained the concept of "invited error" in *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996), as follows:

> "Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*Crabtree*, 198 W. Va. at 627, 482 S.E.2d at 612. *See also* Syl. pt. 2, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971) ("An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.").[5]  Insofar as the Petitioner opened the door to the inadmissible testimony by the grandfather, he cannot obtain relief from an error that he caused by going beyond the limited scope of the State's rebuttal.

In view of the foregoing, we affirm.

Affirmed.

---

[5] There is an exception to the invited error doctrine. We have recognized that the doctrine should not be applied when its application would result in a manifest injustice, or where it "'is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice.'" *Crabtree*, 198 W. Va. at 628, 482 S.E.2d at 613 (quoting *Wilson v. Lindler*, 995 F.2d 1256, 1262 (4th Cir. 1993)). The facts in this case clearly demonstrate that the exception to the invited error doctrine does not apply. *See* 1 Palmer, et al., *Handbook on Evidence*, § 34 ("Whether or not the circumstances of a particular case justify deviation from the normal rule is largely to the discretion of the appellate court.").

**ISSUED: November 5, 2018**

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell, sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins


Justice Allen H. Loughry II, suspended and therefore not participating.